176 N.J. Super. 101 (1980)
422 A.2d 433
BRIGHTON, INC. ET AL., PLAINTIFFS-APPELLANTS,
v.
COLONIAL FIRST NATIONAL BANK ET AL., DEFENDANTS-RESPONDENTS. COLONIAL FIRST NATIONAL BANK ET AL., THIRD-PARTY PLAINTIFFS-RESPONDENTS,
v.
AVENEL REALTY COMPANY AND NORMAN HIRSCHFIELD, THIRD-PARTY DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued September 23, 1980.
Decided October 15, 1980.
*105 Before Judges MATTHEWS, MORGAN and MORTON I. GREENBERG.
Joseph M. Nolan argued the cause for appellants (Nolan, Bell & Moore, attorneys; Steven L. Strelitz on the brief).
Richard S. Miller argued the cause for respondent Colonial First National Bank (Williams, Caliri, Miller, Otley & Horn, attorneys; Victor C. Otley, Jr., and David Golub on the brief).
Donald J. Rapson argued the cause for respondent Jersey Shore Bank (Lautman, Rapson, Henderson & Mills, attorneys).
James E. Collins argued the cause for respondent Central Jersey Bank & Trust Co. (Cerrato, O'Connor, Mehr & Saker, attorneys).
*106 Marvin J. Brauth argued the cause for respondent New Jersey National Bank (Wilentz, Goldman & Spitzer, attorneys).
The opinion of the court was delivered by MORGAN, J.A.D.
This appeal presents issues, some novel to New Jersey, arising from those portions of the Uniform Commercial Code which deal with bank collection problems and the liabilities of depository and drawee banks with respect to checks drawn by a so-called "faithless employee." The matter was adjudicated summarily in favor of the banks. Plaintiffs appeal.
The facts are, in the main, uncontroverted. They focus on the activities of Norman Hirschfield, the faithless employee of the plaintiffs, a group of real estate management firms, who between 1973 and 1978 embezzled well over $300,000 from plaintiffs' accounts with several of the defendant-payor-drawee banks. The fraudulent scheme used was not complex. His employment carried with it the authority to draw checks on his employers' bank accounts. He used this authority to draw such checks, payable to actual companies and individuals who were in fact creditors of his principals but to whom no money was then owing. He would then indorse the checks in the names of those payees and obtain payment from several of the defendant banks. The depository banks would present the checks for payment at the payor-drawee banks and the appropriate account would then be debited.
Certain details concerning his methods of operation are, however, germane to the issues to be considered. Although in most instances Hirschfield signed his own name as drawer in accordance with his authority, in many instances he forged the name of a principal whose name was required on a company check as drawer. Hence, two kinds of checks are to be discussed, each giving rise to different liabilities and rights. The first kind includes checks bearing Hirschfield's authorized signature as maker, which are conceded to be genuine checks drawn by one *107 with authority to do so. The other kind, those with signatures of one other than Hirschfield which were forged by him, are conceded to be forged and will hereinafter be referred to as forged checks. Those checks whose irregularity depends only on a forged indorsement (those bearing Hirschfield's name as drawer) will be referred to as checks bearing forged indorsements. It should be emphasized for clarity that all of Hirschfield's checks have forged indorsements, even those whose maker's signature was forged also-the double forgeries. Forged checks bearing forged indorsements will be referred to as doubly forged checks, or double forgeries.
All checks were drawn on the various accounts plaintiffs maintained at defendant New Jersey National Bank (Jersey National), Jersey Shore Bank (Jersey Shore), and Central Jersey Bank & Trust Company (Central Jersey). Jersey Shore acted only as drawee; Hirschfield cashed no checks there. Jersey National and Central Jersey acted in both capacities; each carried accounts for a plaintiff and each also cashed at least some of Hirschfield's checks. Because of this dual capacity in which these latter banks operated, they will be referred to either as payor banks or depository banks, depending on the context.
Colonial First National Bank (Colonial), the bank at which the largest number of Hirschfield's checks were cashed, is the only defendant bank who had no bank-depositor relationship with any plaintiff which involved any checks in this matter. Colonial was sued only as a collecting-depository bank; the other banks (except Jersey Shore) were sued in both capacities.
On June 21, 1978 plaintiffs notified the drawee banks (Jersey Shore, Jersey National, and Central Jersey) that they had wrongfully debited their accounts with respect to checks bearing forged indorsements. With respect to forged checks, that is, checks bearing the forged signature of a drawer other than Hirschfield, notification was first given on July 17, 1979 although the last such check was cashed in April 1978.
*108 We deal here with three groups of claims. The first group, pleaded in counts 1-3 of the complaint, sought recovery against the depository collecting banks (Colonial, Central Jersey and Jersey National) on theories of negligence, conversion and monies had and received. The second group, pleaded in counts 4-6 of the complaint, sought recovery from the payor-drawee banks, those with which plaintiffs maintained accounts, with respect to checks bearing forged indorsements the amounts of which were debited to plaintiffs' accounts. The third group, pleaded by amendment in counts 7-9, sought recovery from the drawee-payor group for wrongful payment of forged checks, those checks on which Hirschfield forged the name of another, predicated on theories of negligence and conversion.
Summary judgment in defendant banks' favor was entered on the following grounds:
1. As to the payor-drawee banks with respect to the claims on forged checks, action was barred as untimely by N.J.S.A. 12A:4-406(4).
2. As to the depository-collecting banks on pleaded theories of negligence, conversion and monies had and received with respect to checks cashed bearing forged indorsements, on the ground that the Uniform Commercial Code foreclosed action by a drawer against a depository-collecting bank.
3. As to the drawee banks with respect to the debiting of plaintiffs' accounts with the amounts of checks bearing forged indorsements, on the ground that N.J.S.A. 12A:3-405(1)(b), the so-called "fictitious payee" rule, has the effect of absolving the drawee banks from liability, casting the loss instead on the drawer.
Plaintiffs challenge the correctness of these rulings.

POINT I

Drawees' liability for forged checks
N.J.S.A. 12A:4-406(4) provides as follows:

Without regard to care or lack of care of either the customer or the bank a customer who does not within one year from the time the statement and items are made available to the customer (subsection (1)) discover and report his unauthorized signature or any alteration on the face or back of the item or does not within three years from that time discover and report any unauthorized *109 indorsement is precluded from asserting against the bank such unauthorized signature or indorsement or such alteration. [Emphasis supplied][1]
The one-year period limitation in § 4-406(4)[2] is not merely a statute of limitations, but a rule of substantive law barring absolutely a customer's untimely asserted right to make such a claim against the bank.
The purpose of the statute is to have one uniform rule throughout the country in place of the various time periods that existed prior to the U.C.C. As stated in Official Comment 7 thereto, the statute sets forth
... a public policy in favor of imposing on customers the duty of prompt examination of their bank statements and the notification of banks of forgeries and alterations and in favor of reasonable time limitations on the responsibility of banks for payment of forged or altered items.... .
See Official Comment 1; Bailey, Brady on Bank Checks (5th ed. 1979), § 26.16. Rainbow Inn, Inc. v. Clayton Nat'l Bank, 86 N.J. Super. 13, 23 (App. Div. 1964), recognizes that the purpose of this statute "was to fix an absolute time limit within which notice of the forgery must be given by the depositor to the bank and beyond which, if notice is not given, the bank would not be liable for paying a forged instrument and charging the depositor's account."[3] See Official Comment 5 to U.C.C. § 4-406.
Although no New Jersey court has since had occasion to be concerned with the time limits of U.C.C. § 4-406(4), courts in other states consistently hold that the statute constitutes a rule *110 of substantive law absolutely barring liabilities when its condition is not met. Billings v. East River Sav. Bank, 33 App.Div.2d 997, 307 N.Y.S.2d 606, 7 U.C.C.Rep. 237 (App.Div. 1970); Dollar Federal S & L Ass'n of Malverne v. Franklin Nat'l Bank, 18 U.C.C.Rep. 757 (N.Y. Sup. Ct. 1976); Board of Higher Ed. v. Bankers Trust Co., 86 Misc.2d 560, 383 N.Y.S.2d 508, 19 U.C.C. Rep. 599 (Sup.Ct. 1976); Pine Bluff Nat'l Bank v. Kesterson, 257 Ark. 813, 520 S.W.2d 253, 16 U.C.C.Rep. 805 (Sup.Ct. 1975); Terry v. Puget Sound Nat'l Bank, 80 Wash.2d 157, 492 P.2d 534, 535 (Sup.Ct. 1972); Stauffer v. Oakwood Deposit Bank, 19 Ohio App.2d 68, 249 N.E.2d 848, 852 (Ct.App. 1969); Gennone v. Peoples Nat'l Bank & Trust Co., 51 Pa. D. & C.2d 529, 9 U.C.C.Rep. 707 (Com.Pl. 1971).
The statute is clearly applicable to the facts of this case. By plaintiffs' own admission in their complaint, they did not give the drawee banks' notice of any impropriety with respect to the subject checks until June 21, 1978. That notice dealt only with a claim of forged indorsements which we will hereinafter be discussing. No notice was given to drawees of any alleged unauthorized signatures until plaintiff filed and served its amendment in this action on July 17, 1979. That notice was well beyond the one-year time limit-and summary judgment dismissing the seventh, eighth and nine counts was clearly warranted.
Plaintiffs acknowledge that § 4-406(4) bars a claim based upon forged signatures, but seek to avoid the effect of this enactment by arguing that the statute does not preclude "independent causes of action":
... it is eminently clear that while plaintiffs are precluded from asserting claims based upon unauthorized signatures per se, they are not barred from asserting an independent cause of action based upon either negligence, breach of contract, of conversion of money had and received.
Phrased differently, plaintiffs contend that they can avoid the time limitation by couching their claim based on forged signatures in different terms, viz. negligence, conversion, money had and received and breach of contract (counts 7, 8 and 9 of the amendment to complaint).
*111 Plaintiffs' argument is without merit. Whether defendants neglectfully failed to discover the forged signatures or by reason of paying forged items and debiting plaintiffs' account converted their money, the fact remains that the sine qua non for a drawee bank's liability to its customer is payment of an item over a forged or unauthorized signature of a drawer or of an item not otherwise properly payable. U.C.C. § 4-401(1). Without that essential element, the banks' neglect would not create liability; they would not have converted their customers' funds and would not be in possession of their customers' money subject to recovery for monies had and received.
Plaintiffs' resort to Kraftsman Container Corp. v. United Counties Trust Co., 169 N.J. Super. 488 (Law Div. 1979), as support for its contention that § 4-406(4) does not bar independent causes of action is unavailing. The action for breach of contract which there survived the bar of § 4-406(4) was not based upon a forged maker's signature, but rather upon forged indorsements. Even there, however, the court was careful to point out that the indorsements were not viewed as forged under § 3-405, the fictitious payee rule,[4] were effective to pass title, and the action for breach of contract for the failure to exercise good faith was therefore unaffected by the three-year bar of claims based upon forged indorsements. 169 N.J. Super. at 497.
Similarly, Sun'N Sand, Inc. v. United California Bank, 21 Cal.3d 671, 148 Cal. Rptr. 329, 582 P.2d 920 (Sup.Ct. 1978), does not help plaintiff. There the claim was made against a collecting-depository bank for negligence, not, as here, against a drawee bank for improperly debiting a customer's account. In Sun'N Sand, therefore, § 4-406(1) has no application because that provision is addressed to a customer's obligation to his own bank to discover and report unauthorized signatures or indorsements.
In our view, the trial judge correctly held that § 4-406(4) barred plaintiffs' claims against the drawee banks in which the maker's signature was forged or unauthorized.

*112 POINT II

Drawees' liability for forged indorsements
We start with the general proposition that a drawee bank may not properly debit the account of a customer whose check bears the forged indorsement of a payee. (§ 3-404). Where it does so and where the drawee is so notified within three years from the date the statement, and the challenged item is made available to the customer that such is the case, § 4-406(4), it will be required to recredit the customer's account by the amount of the check bearing the forged indorsement. § 4-401. A forged indorsement is normally ineffective to pass title to the instrument on which it appears.
With respect to checks bearing forged indorsements the amounts of which were debited to a plaintiff's account more than three years prior to return of the forged item, no claim against a drawee may be pressed for reasons given in the first point. § 4-406(4). With respect to the many items not so barred as untimely, summary judgment was entered in the drawees' favor on the basis of § 3-405, the so-called fictitious payee rule.
§ 3-405(1)(b) provides: "[a]n indorsement by any person in the name of a named payee is effective if ... a person signing as or on behalf of a maker or drawer intends the payee to have no interest in the instrument...."
This statute was designed to place the loss from the activities of a typical "faithless employee" upon the employer rather than upon the bank. As stated in Official Comment 4:
... The principle followed is that the loss should fall upon the employer as a risk of his business enterprise rather than upon the subsequent holder or drawee. The reasons are that the employer is normally in a better position to prevent such forgeries by reasonable care in the selection or supervision of his employees, or, if he is not, is at least in a better position to cover the loss by fidelity insurance; and that the cost of such insurance is properly an expense of his business rather than of the business of the holder or drawee.
See, also, New Jersey Study Comment 1 to § 3-405.
The loss is shifted by making the indorsement effective rather than by explicitly imposing it upon the drawer. By *113 declaring a forged indorsement "effective," a collecting bank's liability on a § 4-207 warranty and a drawee bank's liability to its customer under § 4-401 are precluded, with the result that loss is borne by the drawer. Girard Bank v. Mount Holly State Bank, 474 F. Supp. 1225, 26 U.C.C.Rep. 1210 (D.N.J. 1979). See, also, New Amsterdam Cas. Co. v. First Pennsylvania Bank & Trust Co., 451 F.2d 892, 9 U.C.C.Rep. 1169 (3 Cir.1971); General Acc. F. & L. Assur. Corp. v. Citizens F.B. & T. Co., 519 S.W.2d 817, 16 U.C.C. Rep. 782 (Ky. 1975).
A typical situation to which § 3-405 applies is given as an example in Official Comment 3 to § 3-405:
c. The drawer makes the check payable to P, an existing person whom he knows, intending to receive the money himself and that P shall have no interest in the check.
Plaintiffs' complaint pleads facts directly congruent to the given example. Hirschfield drew checks to the order of payees he intended to have no interest therein. In such circumstances § 3-405 mandates that anyone's indorsement for the payee, even Hirschfield's, is "effective," thus passing title and making the item properly payable under § 4-401. A drawee receiving that item, as did the three drawee banks in this matter, is authorized to debit the customer's account in the amount of such a check. Any loss thereon is borne by the customer as the Code clearly intended.
Plaintiffs' challenge to the correctness of this ruling is unconvincing. As a means to avoid the effect of § 3-405, plaintiffs argue cases implicating the negligence or bad faith of the bank dealing with the forger himself or the one presenting the check bearing the forged payee's indorsement. See, e.g., New York City Bd. of Higher Ed. v. Bankers Trust Co., 86 Misc.2d 560, 383 N.Y.S.2d 508, 19 U.C.C.Rep. 599 (Sup.Ct. 1976); McConnico v. Third Nat'l Bank of Nashville, 499 S.W.2d 874, 13 U.C.C.Rep. 641 (Tenn.Sup.Ct. 1973). Jersey Shore, however, never dealt with the forger or anyone other than the collecting bank presenting the forged item for payment. Clearly no negligence or bad faith for payment over a forged indorsement can be *114 imputed to that bank. With respect to the other drawee banks which dealt only infrequently with the forger, no case of bad faith can be made out.[5]
Accordingly, we hold that a drawee bank bears no liability to its customer with respect to forged indorsements validated under an applicable fictitious payee rule. Such items are regarded as properly payable under § 401(1) in furtherance of the Code design to cast the loss for such items on the customer rather than on his bank.

POINT III

Liability of Collecting-Depository Banks
Plaintiffs' claims against the collecting-depository banks, asserted in counts 1-3 of the complaint, were summarily dismissed on the ground that the Code forecloses suits by drawers against such banks for losses sustained by the negligence of the collecting bank in failing to detect a forged indorsement. We note that although this holding was in accord with New Jersey case law, none of those cases bind this court. See Western Union Tel. Co. v. Peoples Nat'l Bk. Lakewood, 169 N.J. Super. 272 (App.Div. 1979); Life Ins. Co. of Virginia v. Snyder, 141 N.J. Super. 539 (Cty.D.Ct. 1976); First Nat'l Bank, Bloomingdale v. North Jersey Trust Co., 18 N.J. Misc. 449 (Sup.Ct. 1940). The Code is silent on the issue, and cases elsewhere are divided. See, e.g., Elwert v. Pacific First Federal S. & L. Ass'n, 138 F. Supp. 395 (D.C.Or. 1956) (recovery allowed); Home Indem. Co. v. State Bank of Ft. Dodge, 233 Iowa 103, 8 N.W.2d 757 (Sup.Ct. 1943) (recovery allowed); Franklin Sav. Bank v. International Trust Co., 215 Mass. 231, 102 N.E. 363 (Sup.Jud.Ct. 1913) (recovery *115 allowed); California Mill Supply Corp. v. Bank of America Nat'l Trust & Sav. Ass'n, 36 Cal.2d 334, 223 P.2d 849 (Sup.Ct. 1950) (recovery denied); Trojan Publishing Corp. v. Manufacturers Trust Co., 298 N.Y. 771, 83 N.E.2d 465 (Ct.App. 1948) (recovery denied); Land Title & T. Co. v. Northwestern Nat'l Bank, 196 Pa. 230, 46 A. 420 (Sup.Ct. 1900), aff'd 211 Pa. 211, 60 A. 723 (Sup.Ct. 1905) (recovery denied).
Before addressing this issue, we consider first the practical context impelling plaintiffs to insist upon the validity of the drawer-collecting bank cause of action. To the extent that the items instrumental to plaintiffs' losses contained the forged signatures of the drawer (forged checks), they were not "properly payable" by the drawee banks. Timely demand to recredit the drawer's account would have forced those drawees honoring such forged checks to do so. The Code provides that as between the drawee bank and the customer, forged check losses are borne by the drawee bank since payment not made pursuant to directions of a "properly payable" order cannot be charged to the customer's account. § 4-401.
Accordingly, those checks bearing double forgeries, that is, a forged drawer's signature as well as a forged payee's indorsement, are properly to be regarded as forged checks for purposes of determining the appropriate remedy. Bailey, Brady on Bank Checks (5th ed. 1929), § 32.23. So viewed, the loss for doubly forged checks falls on the drawee bank. A drawee's payment of a forged check is final in favor of a holder in due course or one who has relied on the payment in good faith. § 3-418. Prior parties in the collection chain who meet the prerequisites of § 3-418 are immunized by this final payment rule from any liability for negligence in dealing with the forged check. Perini Corp. v. First Nat'l Bank of Habersham Cty., 553 F.2d 398, 404 (5 Cir.1977), reh. den. 557 F.2d 823 (1977). That the payee's indorsement may also be forged, and may have remained undiscovered because of a collecting bank's departure from accepted commercial standards in cashing the check, does not convert the check into a genuine one.
*116 In the present matter, with respect to those loss-generating checks which bore double forgeries, plaintiffs were afforded a complete remedy, a demand on their drawee banks for a recredit of their accounts in the amounts reflected by the paid forged checks. Plaintiffs' loss of that remedy resulted from lapse of over a year from the last statement reflecting such a check without notice, demand or suit. § 4-406(4). Because the appropriate recourse has been lost by lapse of time, plaintiffs seek to hold the collecting banks on the several theories previously described, because only the general period of limitations, N.J.S.A. 2A:14-1, would bar such a suit.
We regard a suit against a collecting bank on a forged check which also bears a forged indorsement as foreclosed, on whatever the theory, for one principal reason. Whatever negligence caused the collecting bank to pay the forger over the forged indorsement, such negligence cannot be regarded as the cause of the customer's loss. Loss accrued only when the customer's account was debited by the drawee bank, not when the forger collected on his indorsement.[6]Stone & Webster Eng. Corp. v. First Nat'l B. & T. Co., 345 Mass. 1, 10, 184 N.E.2d 358, 364 (Sup.Jud.Ct. 1962). The collecting bank had no duty, and indeed no means, to check the genuineness of the drawer's signature; only the drawee bank was in a position to do that. That the collecting bank presented the forged check to the drawee bank for payment cannot serve to impose liability on that bank in favor of the ostensible drawer. As noted previously, the Code is designed to place loss for payment of a forged check on the drawee only, and by such payment, prior parties are conditionally immunized, in codification of the final payment rule. § 3-418. In the typical double forgery case, neither the ostensible drawer (the employer of the faithless employee) nor *117 the collecting bank will be called upon to pay again the payee, because the payee named on the doubly forged check was never intended to receive payment. The normal hazard encountered in honoring a check bearing the forged indorsement of the payee is that the forger will be paid, and when the true payee comes forth, his debt will have to be paid. In the double forgery situation, the loss need only be paid once, and it is the drawee bank's loss because payment was made of an item not properly payable, not in accordance with the customer's order.
The second reason for our holding that plaintiffs have no claim against the collecting banks on those doubly forged checks on which they sustained loss is that they forfeited, by lapse of time, the remedy which was afforded them. To permit them to circumvent this explicit time limitation on suit against the drawee, by bringing suit intended against the collecting banks, affording them five additional years in which to do so, would undermine the essential scheme for loss distribution embraced in the Code.
As to the majority of checks, however, those which are not regarded as forged because they contain the authorized signature of Norman Hirschfield, another legal context is presented. Because § 3-405(1)(b) renders "effective" Hirschfield's indorsement of the payee he intended have no interest in the check, the drawee bank upon which the check was drawn was authorized to pay the check, and the item, unlike the forged check just discussed, was a properly payable one. This is in accordance with the Code design to impose the loss from faithless employee manipulations on the employer rather than on the bank which, even negligently, fails to detect the fraud. In short, § 3-405 can be regarded as codifying the proposition that a faithless employee prospers from his employer's negligence, and such an employee's signature will be held effective against the employer. See White and Summers, Uniform Commercial Code, § 16-8 at 541 (1972). The provision has been recognized as a banker's provision intended to narrow the liability of banks *118 and broaden the customer's responsibility. Id. at 549. This is also explicitly recognized by Official Code Comment 4.
Hence, where recovery on forged indorsements is sought against the collecting banks on theories of negligence, conversion or money had and received, we confront a situation wherein plaintiffs have no other recourse and where the Code provides none. With respect to such items, plaintiffs have no claims against the drawee banks; those banks properly debited plaintiffs' accounts. Their only recourse, if they have any at all, is against the collecting banks. In this posture plaintiffs urge strenuously a cause of action against those banks without which they cannot be held accountable. Plaintiffs' primary target is Colonial National, the collecting bank which cashed the large majority of the checks bearing forged indorsements. Plaintiffs point to the large numbers of checks cashed at the one branch, many involving sizeable sums of money, many cashed the same day, and with apparently no attempt by Colonial to require the person cashing them to make proper identification.
Although we recognize that the availability of an ostensible drawer's suit against a collecting bank has been a matter of dispute among the jurisdictions considering the issue, we are convinced that with one exception the claim should not be available. Firstly, despite the prolonged existence of controversy concerning the availability of a drawer's suit against a collecting bank, and the many arguments urged in its favor, such as an avoidance of circuity of action, the Code generally, and as adopted in New Jersey, is silent in this regard. Pre-Code New Jersey law rejects such a suit. We view the Code's silence as against the presumed awareness of the controversy and, together with pre-Code New Jersey law against such suits, as suggestive that nothing in the Code was intended to change this law. Second, as previously stated, the explicit and recognized policy of the Code is to place the loss from faithless employees on their employer, not on the employers' banks.
New Jersey law, pre- and post-Code, has adopted this view which is fully consistent with the Code design. Western Union *119 Tel. Co. v. Peoples Nat'l. Bk. Lakewood, 169 N.J. Super. 272 (App.Div. 1979); Life Ins. Co. of Virginia v. Snyder, 141 N.J. Super. 539 (Cty.D.Ct. 1976). Plaintiffs nonetheless urge us to disregard such authority and permit the suit for several articulated "policy" reasons. Analysis of these reasons suggests no justification for change. Avoiding circuity of action in cases such as this where forged indorsements become effective under § 3-404 makes little sense. Unlike the usual forged indorsement case where a drawee is forced to recredit its customer's account and attempt to recoup its loss against those in the collection chain, a forged but "effective" indorsement generates no action, circuitous or not. The loss is where the Code intended it be, on the business employing the faithless employee.
Who should take this loss? There is probably a feeling, largely unarticulated, that the loss should be taken by the drawer (employer). His employee, acting within the scope of his authority, caused the loss; he is in the best position to prevent it by supervision and by using care in hiring employees; he has as good a chance as the bank to distribute the risk to all of society through the use of insurance.... [New Jersey Study Comment 1]
Another "policy" factor, according to plaintiffs' argument, is the "drawer's desire to avoid a direct suit against the drawee." Apart from the fact that disruption of friendly business relations has not prevented the present suit by customer against drawee, we fail to see how permitting a direct suit against a collecting bank will avoid assertion of a nonexistent claim against a drawee. Similarly, the possibility of the drawee bank's insolvency as the reason to permit a suit against a collecting bank is hardly persuasive. The final policy reason given by plaintiffs in support of a direct claim against a collecting bank is that it "may also be the only effective way of mitigating the often inequitable impact of the fictitious payee rule (§ 3-405(1)(b))." We are not persuaded by an attempt to frustrate the Code's clear design to place the loss, in fictitious payee cases, on parties in plaintiffs' position.
Nor are we persuaded by plaintiffs' arguments to view the warranties described in N.J.S.A. 12A:4-207 as benefiting the *120 drawer of the check as well as those receiving the item from the depository-collecting bank. Under this theory which views the drawer, or ostensible drawer, as an "other payor ... who pays" within the meaning of those terms appearing in § 4-207, the drawer's action against the collecting bank would be a suit for breach of that warranty. A line of California cases, culminating in Sun'N Sand, Inc. v. United California Bank, supra, is cited in support. The essential problem with this view in the context of this case is that all of the indorsements have been rendered "effective" by § 3-405, the fictitious payee rule. Hence, even accepting as true all of plaintiffs' pleaded facts, we must conclude that no cause of action for breach of warranty has been pleaded. Sun'N Sand, Inc. v. United California Bank, supra, 148 Cal. Rptr. 329, 340-341, 582 P.2d 920, 931-932, in this regard is not to the contrary.
Nonetheless, we do hold that plaintiffs may maintain a claim against one of the collecting banks, Colonial National, but only for a cause of action sounding in conspiracy or actual fraud by the principals of that bank in alleged confederation with Hirschfield. As the theory was developed during the oral argument of this cause, plaintiffs assert that the sheer number of checks cashed by Hirschfield over a forged payee indorsement at the one branch, some involving payment of substantial sums, often cashed on one day,[7] bespeaks more than negligence or recklessness but actual complicity between bank personnel and Hirschfield. Plaintiffs maintain that Hirschfield could not have succeeded without the aid of bank personnel. They have asked leave to develop proofs on this theory.
We regard this claim as falling outside the intended scope of the Code. What is here alleged is a scheme involving or approaching the criminal in its attempt to wrest funds by check *121 manipulation from those on deposit with several drawee banks. In our view, the Code deals with normal commercial transactions, even those negligently executed. It makes no attempt to deal with the criminal except to disclaim any intention to modify or alter criminal or civil liability of the forger. We assume that disclaimer to include those working in confederation with the forger. Surely the loss to be borne by the employer of a faithless employee was not designed to embrace as well losses inflicted by the collecting banks in a deliberate conspiracy to inflict such losses.
In our view, the described claim falls outside Code concerns and plaintiffs should be permitted to pursue it. The fact that one entity charged with the conspiracy or fraud is a collecting bank should not provide it with an immunity it would otherwise not enjoy. The pleadings, however, insufficiently plead this claim. They should be appropriately amended to allege specific facts underlying the claim of fraud.
The judgment is affirmed with the exception of plaintiffs' claim against Colonial First National Bank based upon actual fraud and conspiracy. The judgment with respect to that claim is vacated and the matter remanded to the trial court for further proceedings consistent with this opinion.
NOTES
[1] This statute replaced former N.J.S.A. 17:9A-226(a) which had a blanket two-year limit, as distinguished from the U.C.C. provision which provides a one-year period for discovering and reporting an "unauthorized signature" but a longer period of three years for discovering and reporting an "unauthorized indorsement." See Official Comment 5 to U.C.C. § 4-406 and New Jersey Study Comment 4 thereto.
[2] All U.C.C. citations are to N.J.S.A., Title 12A.
[3] Although Rainbow Inn dealt with the predecessor statute, the decision was rendered at a time when the Uniform Commercial Code had already been adopted in New Jersey, and Judge Kilkenny, in defining the legislative intent, took specific note of U.C.C. § 4-406(4) as the successor provision. 86 N.J. Super. at 24, 205 A.2d 753.
[4] See discussion under Point II, infra, beginning at 112.
[5] For example, Jersey National was a collecting bank only with respect to nine checks totaling $6,223. Of these, four checks in the total amount of $3,518 were cashed and paid prior to 1973. That means only five checks were cashed at Jersey National between 1973 and 1978. Plaintiff's potential for proving Jersey National's knowledge of the fraud is too remote for consideration.
[6] The traditional rationale is that a bank cashing an item with a forged payee's indorsement pays out its own money. When and if the real payee makes his claims, the bank will then pay the drawer's money. Hence, when a bank cashes a check with its own funds, no harm befalls the drawer.
[7] For example, at oral argument we were shown two checks drawn to the order of two sewer authorities in an amount exceeding $10,000, both of which Colonial cashed on the same day presumably for Hirschfield.