BRIGHTON, INC.; 33 ABERDEEN ROAD, INC.; SYLVANIA APARTMENTS, INC.; SHARK RIVER GARDENS, INC.; RAVINE APARTMENTS, INC.; TREE HAVEN, INC.; RIVER BEND APARTMENTS, INC.; BIJOU VILLA; TEDDY CONSTRUCTION COMPANY, INC.; 60 MONMOUTH PARK HIGHWAY CORPORATION; PLANNED RESIDENTIAL COMMUNITIES CONSTRUCTION COMPANY, INC.; ROBERT M. KAYE T/A CLIFTON ARMS APARTMENTS; ROBERT M. KAYE T/A FARMINGDALE GARDENS APARTMENTS AND PRC MANAGEMENT COMPANY, INC., PLAINTIFFS–APPELLANTS, v. COLONIAL FIRST NATIONAL BANK, DEFENDANT–RESPONDENT, AND THE CENTRAL JERSEY BANK AND TRUST COMPANY; NEW JERSEY NATIONAL BANK AND JERSEY SHORE BANK, DEFENDANTS.

COLONIAL FIRST NATIONAL BANK, THIRD–PARTY PLAINTIFF, v. AVENEL REALTY COMPANY AND NORMAN HIRSCHFIELD, THIRD–PARTY DEFENDANTS.

Argued April 6, 1981—Decided June 9, 1981.

*Joseph M. Nolan* argued the cause for appellants (*Nolan, Bell & Moore*, attorneys; *Steven L. Strelitz*, on the brief).

*Richard S. Miller* argued the cause for respondent (*Williams, Caliri, Miller, Otley & Horn*, attorneys).

PER CURIAM.

The judgment is affirmed substantially for the reasons expressed in the opinion of the Appellate Division, reported at 176 *N.J.Super.* 101 (1980).

HANDLER, J., concurring in part, dissenting in part.

We are confronted in this petition for certification with the paradoxical but narrow issue of whether and under what circumstances a bank, known in the terminology of the Uniform Commercial Code as a non-payor depository bank or collecting bank, see *N.J.S.A.* 12A:4–105, can be liable to a non-customer, drawer of a check for having cashed that check based upon an indorsement forged by the drawer's agent and employee.[1]

As reflected in the decision below, 171 *N.J.Super.* 101, such a determination within the commercial code involves a painstaking analysis of varied statutory provisions and policies. In barest essence, unencumbered by textual embellishment and contradistinction, the uniform code provides that forged indorsements are ineffective, and allocates the ultimate loss, accordingly, upon the party who has supplied the forger with monetary compensation in exchange for the forged instrument—in this case the collecting bank. Such a result is predicated upon the commercial construct which provides that an instrument is to be payable only according to its terms. *N.J.S.A.* 12A:3–404(1).

---

[1] This represents the sole issue pursued in this appeal by way of a certification. The litigation itself enveloped other banking institutions, with which the plaintiff had a depository relationship, involving both forged indorsements and forged drawer's signatures. The Appellate Division in an able and comprehensive opinion by Judge Morgan held that those institutions were not liable on any of the instruments under the facts of this case.

White & Summers, *Uniform Commercial Code* (1972) § 16–18. The Code, however, provides a number of mechanisms for shifting the loss to a party other than the entity which first rewarded the forger for his or her efforts. *Id.* Thus, liability will generally spring to a party whose negligence has substantially contributed to the forgery, by precluding such a party from asserting that the instrument had been forged. *N.J.S.A.* 12A:3–406. Additionally, where an indorsement is forged by a faithless employee or agent, the loss, through the device or commercial fiction of an "effective" indorsement, is generally to lie with the employer, the party who presumptively dealt more closely with the forger and was best able to prevent the loss, and not with a banking institution.[2] *N.J.S.A.* 12A:3–405(1)(b). Added to this mix of loss-shifting mechanisms is the general Code notion which discourages direct suits against a collecting bank by a third party. See 176 *N.J.Super.* at 116. Conceding the weight necessarily accorded to commercial pragmatism and convenience, at bottom these provisions encapsulate a principle that the party most responsible for a resultant loss should be held liable.

In the peculiar facts of this case, we are presented with a situation wherein the collecting bank handled many checks that it cashed personally for the faithless employee, over differing forged payee indorsements, at one branch of a collecting bank, involving the payment of substantial sums, and often cashed on one day.[3] Commercial misconduct of this kind would under

---

[2] For comparative purposes, it should be noted, as developed by the court below, that the loss due to a forged drawer's signature, even if forged by the drawer's agent, lies with the drawer's bank because it is statutorily charged with insuring that its customer's signature is valid prior to authorizing payment. 176 *N.J.Super.* at 108–111.

[3] The record below suggests that checks were cashed which had been made payable to sundry corporate payees in amounts ranging from hundreds to thousands of dollars. The forger apparently personally cashed many checks on the same day in the same branch office despite the fact that the indorsing party on each check was different. It appears that in one instance two

normal commercial code situations render a bank institution liable for negligence.

Even in this egregious factual setting, however, I concur with Judge Morgan's determination below, for the reasons thoroughly explicated in her opinion, that the mechanical application of the varied Code provisions in cases of this sort would yield a result of non-liability for a collecting bank. The literal mandate of the Code in normal commercial transactions, even those negligently executed, is for the loss due to an indorsement forged by a faithless employee to fall upon the party who most frequently dealt with the forger and was best able to prevent the forgery—the employee's employer. A collecting bank generally is not subject to a direct suit by a third party, and, although a bank's negligence is normally sufficient to provide for bank liability, the Code provision which establishes that principle is not applicable to this faithless employee-forged indorsement situation.

The literal application of these rules in this case, however, would produce anomalous and unjust results, for the collecting bank would escape from liability despite horrendous commercial dereliction. As the court below recognized, placing the loss upon the forger's employer, who, comparatively, was significantly less able than the collecting bank to prevent the loss, would do violence to the basic underlying principles of the commercial code. 176 *N.J.Super.* at 120–121. In such a situation, commercial common sense, as evinced in the underlying policy of the Code, must necessarily thrust liability upon a collecting bank, the commercial misconduct of which has been egregious, beyond the bounds of mere negligence, and which on a comparative basis shoulders a huge responsibility for the ultimate financial loss.

Allocating the loss to the collecting bank in this case would be totally consonant with and supported by the Uniform Commer-

---

checks, payable to corporate payees, were personally cashed on the same day for amounts exceeding $10,000.

cial Code which, through risk-shifting mechanisms, places the loss upon the party best able to prevent the forgery. *Supra* at 260–261. This underlying principle is further rooted in general notions of equity which have not been displaced by the uniform codification, *N.J.S.A.* 12A:1–103 (common law principles of equity, dealing with, for example, estoppel and fraud, are not displaced by and supplement the Code), *N.J.S.A.* 12A:1–203 (every activity within the Code is imposed with an obligation of good faith in its performance or enforcement); and, it may be perceived as an extension of the general notion, under *N.J.S.A.* 12A:3–406, that a bank is to be held liable for negligently contributing to the forgery. See White & Summers, *supra*, § 16–8 at 548–549; Note, "The Effect of Bank Misconduct on the Operation of the Padded Payroll Preclusion of U.C.C. § 3–405," 26 *U.C.L.A. Law Rev.* 147 (1979).

My colleagues and the court below have acknowledged that the mechanized application of the Code provisions, which in this case would place the loss upon the employer, is not warranted or serviceable when the commercial conduct of the collecting bank constitutes fraud. Nonetheless, they would apply the literal strictures of the Code to commercial conduct that is reckless and wanton in nature but falls short of fraud. I see no basis for this distinction and believe it to be inconsistent with the basic reasoning adopted by this Court. 176 *N.J.Super.* at 120–121. In my opinion, the analytical momentum of the majority's rationale, with which I agree, ineluctably leads to the conclusion that an extra-Code cause of action for commercially reckless conduct must lie against the collecting bank.

As recognized by the majority, were the conduct of the banking institution no worse than negligent, the codification's underlying presumption that the employer had the best opportunity to prevent the loss would seem to remain both valid and prudent. However, in my view, where conduct goes beyond negligence, where, as herein alleged, the conduct is outrageous in nature, that presumption loses all force. When the conduct of a collecting bank amounts to commercial gross negligence or

is wanton or reckless, or is potentially fraudulent or conspiratorial, there is no reason not to presume that a bank has the capacity to avert the loss through minimal corrective action.

Consequently, while I agree with the Court that in this kind of case a collecting bank enjoys no immunity for its own conspiratorial or fraudulent conduct, I would extend the majority's holding to allow for extra-Code collecting bank liability for grossly negligent, wanton or reckless conduct. I perceive of no reason to distinguish between that kind of commercial conduct and that which amounts to fraud or conspiracy. In both situations the banking institution is best able through normal, even merely negligent, commercial activity to prevent or reduce the risk of embezzlement. In either case liability serves as a corrective measure designed to insure minimally tolerable commercial standards of conduct.[4] Liability in either circumstance does not encumber or obstruct normal and routine commercial intercourse which is appropriately governed by the uniform rules of the commercial codification. 171 *N.J.Super.* at 121.

The commercial pragmatism of the Code tolerates a degree of negligence but it does not and should not be construed to countenance either fraud or recklessness. As a matter of common law and general Code principles a banking institution should be held accountable to a standard of commercial dealing

---

[4]Faced with a similar factual situation, namely, gross commercial misconduct falling short of fraud, the New York Court of Appeals allowed a direct suit against a collecting bank by an employer. *Underpinning v. Chase Manhattan Bank*, 46 *N.Y.2d* 459, 414 *N.Y.S.2d* 298, 386 *N.E.2d* 1319 (1979). In that case, the employee and agent had forged indorsements which were restrictive in nature, being limited to deposit only. Although the forged indorsement was rendered legally effective by U.C.C. § 3–405(1)(b), the Court of Appeals therein reasoned that because the check was restrictively indorsed the collecting bank was provided with the best opportunity of thwarting the forgery, even better than the proximity of the relationship of forger and employer. Its failure to abide by normal, even negligent, commercial banking practices in cashing the check in disregard of the restrictive indorsement, albeit a forgery, so offended commercial code norms that liability was appended to the collecting bank.

that would require it to stop embezzlement that has been abetted or encouraged by its own excessive misconduct.

Accordingly, I dissent from the position of my colleagues to the extent that they would not hold a collecting bank liable in a direct action by a drawer for conduct reckless in nature.

Justice PASHMAN joins this opinion.

*For affirmance*—Justices SULLIVAN, CLIFFORD and POL-LOCK—3.

*Concurring in part and dissenting in part*—Justices PASH-MAN and HANDLER—2.