244 N.J. Super. 600 (1990)
583 A.2d 361
AMERICAN INSURANCE COMPANY, PLAINTIFF-APPELLANT,
v.
FIDELITY BANK AND TRUST COMPANY OF NEW JERSEY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued February 22, 1990.
Decided March 9, 1990.
*601 Before Judges GAULKIN and DREIER.
Grace C. Bertone argued the cause for appellant (McElroy, Deutsch & Mulvaney, attorneys; James M. Mulvaney, of counsel; Grace C. Bertone, on the brief).
James J. Kreig argued the cause for respondent (James J. Kreig, on the brief).
The opinion of the court was delivered by DREIER, J.A.D.
*602 Plaintiff, American Insurance Company, the surety for Dion Ryle, guardian of the estate of Mary A. Duddy, an incompetent, appeals from a summary judgment for defendant, United Jersey Bank (UJB), as the successor to Fidelity Bank & Trust Co. of New Jersey. UJB was the depository chosen by Ryle. He had opened a one-signature account with statements to be sent only to him. He then obtained the surety bond from plaintiff, and the surety then sent a Joint Control Agreement to UJB. The Agreement specified that checks should be honored only on the joint signatures of Ryle and one of plaintiff's named representatives for whom specimen signatures were provided. It stated:
The American Insurance Company has become Surety on my bond as Guardian of the estate of Mary Duddy a/k/a Mary A. Duddy in consideration of my agreement that said Surety shall have joint custody of the cash and securities belonging to said estate. You have been selected by me as a depository of money and/or securities of said estate upon condition that you permit withdrawal thereof only by check or order signed by me and countersigned by said Surety by an authorized representative; and a safe deposit box in your vault has been or may be rented by me in my fiduciary capacity on condition that you permit access thereto only in the presence of an authorized representative of said Surety. Please acknowledge receipt in place provided below.
There was, however, no requirement that there be any duplicate statements sent to plaintiff.
Thereafter, over a period of two years, Ryle issued a number of one-signature checks payable to himself. The statements were duly sent only to him, and plaintiff never inquired concerning the status of the account nor did it monitor the bank's handling of the checks. When the incompetent died, her executor discovered the loss of approximately $50,000 and looked to the surety for payment.
The surety claims that the bank has breached the Joint Control Agreement by paying items on an unauthorized *603 signature.[1] United Jersey Bank, however, raises the defense of N.J.S.A. 12A:4-406(4), which provides a one-year limitation if the bank has sent the "customer a statement of account accompanied by items paid in good faith" or has made "the statement and items available to the customer." Plaintiff argues that it was not the bank's "customer," but rather had a separate surety relationship with the customer, Ryle, which agreement the bank independently agreed to honor.
We have no doubt that if the account had been opened as a two-signature account, the statute would apply and the case would be an easy one. If joint-signatories direct that the statement be mailed to but one of them, the prerequisites for the one-year limitation would have clearly been demonstrated. The problem here is that the bank had an established account, and then entered into a separate agreement for joint control. Does that make the surety a "customer" of the bank? As the statute defines "customer," we hold that it does.
"Customer" is defined by N.J.S.A. 12A:4-104(1)(e) as [1] "any person having an account with a bank" or [2] "for whom a bank has agreed to collect items," and [3] "includes a bank carrying an account with another bank." We have divided this clause into its three parts, and it is clear that the surety is not one for whom items were being collected nor is it a bank carrying an account with defendant, eliminating parts 2 and 3. The question, therefore, is whether the surety is a "person having an account with a bank." There is no question that the corporate surety itself can be considered a "person." N.J.S.A. 12A:1-201(30). But, since "person" also includes an "organization," and "organization" includes ... "2 or more persons having a *604 joint or common interest,"[2] Ryle and the surety taken together, therefore should be considered an "organization," and thus a "person." Having authorized the sending of the statements to the Ryle half of the "organization," the surety is bound.
The existing case law does not cover this situation, but as we analyze the surety's claim we see that by virtue of the Joint Control Agreement, it is trying to elevate its status above that of a "customer." It attempts to bypass the restrictions of N.J.S.A. 12A:4-406 by looking to the terms of the agreement which gave plaintiff its cosignatory status. Yet the Agreement neither expressly confers a greater right to plaintiff nor imposes an additional obligation upon the bank to notify or monitor the account than would be incumbent in any normal joint-signature arrangement. In Brighton Inc. v. Colonial First Nat'l Bank, 176 N.J. Super. 101, 422 A.2d 433 (App.Div. 1980), aff'd o.b. 86 N.J. 259, 430 A.2d 902 (1981), the plaintiffs attempted to avoid the time limitations of N.J.S.A. 12A:4-406(4) by claiming an independent cause of action based upon "negligence, conversion, money had and received and breach of contract." Id. 176 N.J. Super. at 110, 422 A.2d 433. The court turned aside the argument:
Plaintiffs' argument is without merit. Whether defendants neglectfully failed to discover the forged signatures or by reason of paying forged items and debiting plaintiffs' account converted their money, the fact remains that the sine qua non for a drawee bank's liability to its customer is payment of an item over a forged or unauthorized signature of a drawer or of an item not otherwise properly payable. U.C.C. § 4-401(1). Without that essential element, the banks' neglect would not create liability; they would not have converted their customers' funds and would not be in possession of their customers' money subject to recovery for monies had and received.
* * * * * * * *

*605 In our view, the trial judge correctly held that § 4-406(4) barred plaintiffs' claims against the drawee banks in which the maker's signature was forged or unauthorized. [Id. at 111, 422 A.2d 433].
So too in the case before us. While plaintiff's reliance upon the Joint Control Agreement may be valid to establish its rights as a joint signatory, no separate cause of action may be based upon breach of that contract. The rights and duties of the parties are controlled by the applicable sections of the Uniform Commercial Code.
The effect of our decision will be to place the burden for payments in disregard of the Joint Control Agreement upon the bank for one year, and thereafter upon the surety. Here, the bank is responsible for having failed to honor the Joint Control Agreement; but the surety is equally responsible for its failure to monitor the account. The statute's allocation of this responsibility makes both practical and legal sense.
Affirmed.
NOTES
[1] We agree with Provident Savings Bank v. United Jersey Bank, 207 N.J. Super. 303, 313-314, 504 A.2d 135 (Law Div. 1985), that a check without required multiple signatures bears an "unauthorized signature pursuant to N.J.S.A. 12A:1-201(43)."
[2] It also may be said that the surety has no "joint or common interest" in the account, but merely in monitoring the actions of the guardian. While this argument has some facial appeal, it would draw an unwarranted distinction between joint-control accounts that are opened initially by a guardian and the surety and those where the guardian has initially opened the account and the surety was added by a later agreement. The legal ramifications of both such accounts should be the same.