634 A.2d 149

WASHINGTON SAVINGS BANK, PLAINTIFF–APPELLANT, v. FIRST FIDELITY BANK, N.A., DEFENDANT–RESPONDENT, AND ESTELA TARDY A/K/A ESTELA PLAZA, ALFONSO TARDY, NEW JERSEY AND NATIONAL WESTMINISTER BANK, N.A., AND MICHAEL J. SCHNAPPAUF, SHARA PLAZA, DRYDEN ALBERTO ARROYO, ELSA GARCIA A/K/A ELSA MINO, ONOFRIO PELLEGRINI AND TURI REALTY, INC., DEFENDANTS.

Superior Court of New Jersey
Appellate Division

Argued November 8, 1993—Decided December 13, 1993.

598

Before Judges J.H. COLEMAN and THOMAS.

*Carl E. Klotz* argued the cause for appellant (*Klotz & McCann,* attorneys; *Mr. Klotz,* on the brief).

*Marc S. Klein* argued the cause for respondent First Fidelity Bank, N.A. (*Sills, Cummis, Zuckerman, Radin, Tischman, Epstein & Gross,* attorneys; *Steven S. Radin,* of counsel; *Mark E. Duckstein,* on the brief).

The opinion of the court was delivered by

COLEMAN, P.J.A.D.

This is an appeal by plaintiff from a summary judgment dismissing Count Ten of its Verified Complaint which asserted claims of negligence and breach of warranty against defendant First Fidelity Bank, N.A. (defendant), in connection with its conduct as collecting bank on six checks.

Plaintiff was the drawer and drawee of all checks involved as well as the employer of Estela Tardy who worked in the loan department. She fraudulently induced plaintiff bank to issue six checks involved in this appeal, some of which named customers of plaintiff as the payee.

Check number 9724, dated July 29, 1988, was payable to Walter H. Freier, in the amount of $250,000. Freier had applied for a loan from plaintiff. Estela prepared the loan check, received the appropriate signatures, then gave it to her husband Alphonso Tardy for negotiation. Alphonso forged Freier's endorsement and deposited the check into an account he had opened at defendant bank in his name, trading as Plaza Investments.

Check number 9902, dated January 5, 1989, was made payable to Dominick Orichhio, a customer of plaintiff. Estela originally made the check out for $40,000, representing a loan that was due

to Orichhio from the bank, and left blank the portion of the check where the amount was to be written by the check imprinter. After she secured the necessary signatures from the bank officers, Estela changed the amount to $400,000. Estela forged Orichhio's endorsement and Alphonso deposited the check into his account at defendant bank.

Check number 9905, dated January 12, 1989, was originally made payable to the Division of Motor Vehicles for $50. After obtaining the necessary signatures, even though the check amount line was blank, Estela raised the amount of the check to $500,000, erased the name of the payee, and inserted Plaza Investments as payee. Alphonso endorsed the check and deposited it into his account at defendant bank.

Check number 9911, dated January 30, 1989, was made payable to Charles Frankies Corp., in the amount of $250,000. It was originally made payable to the Division of Motor Vehicles for a much smaller amount, but Estela erased the payee and changed the amount after signatures had been obtained. Alphonso endorsed the check, and deposited it into his account at defendant bank. There is no explanation why plaintiff was sending checks numbered 9911 or 9905 to the Division of Motor Vehicles. In an affidavit submitted in opposition to the summary judgment motion, Thomas S. Bingham, Senior Vice President and Treasurer of plaintiff, states that the alterations of the payee lines on the "Motor Vehicle" checks were visible.

Check number 9914, dated February 7, 1989, was made payable to Delores Stroug, a customer of the bank who had made an overpayment to the bank on a loan. The check was for $840. After the signatures of two bank officers were obtained, while the second line for the amount to be written in words was blank, Estela raised the amount to $205,840. The payee's name was changed to "Plaza Investments" by Alphonso, who endorsed it and deposited it into the same account at defendant.

The final check, number 9923, dated March 3, 1989, was made payable to Maria M. Sabtuccio, who was a real estate appraiser

occasionally retained by plaintiff. Estela raised the check from $340 to $340,000. Alphonso forged Sabtuccio's name, added, "pay to Plaza Investments," and deposited the check into the same account at defendant bank. Estela used plaintiff's check imprinter to fill in the second line amount on each check.

Estela intended that none of the original payees would have any interest in the checks. She pled guilty to conspiracy and bank fraud.

The judge granted summary judgment dismissing the claims of negligence and breach of warranty. The judge found that as between plaintiff as drawer and drawee bank and defendant as collecting bank, the faithless employee, or fictitious payee rule, *N.J.S.A.* 12A:3–405(1)(c), and the imposter rule, *N.J.S.A.* 12A:3–405(1)(a), place all the loss on the drawer-drawee bank. This ruling applied to all the checks under the theory of negligence.

The judge also found that the alleged breach of warranty pursuant to *N.J.S.A.* 12A:4–207(1)(c) respecting check numbers 9905 and 9911 based on visible alterations on the face of the check should be dismissed. The judge reasoned that under both theories, the plaintiff drawer-drawee bank must be liable for the conduct of its faithless employee and to allow recovery for breach of warranty would substantially undermine the faithless employee rule. The judge placed substantial reliance upon *Brighton, Inc. v. Colonial First Nat'l Bank,* 176 *N.J.Super.* 101, 422 *A.*2d 433 (App.Div.1980), *aff'd* 86 *N.J.* 259, 430 *A.*2d 902 (1981).

On this appeal, defendant argues that the judge erred in applying the faithless employee and fictitious payee rules to checks which were payable to bona fide customers and creditors of plaintiff. We reject this contention. Estela admitted that although she used the names of some bank customers as payees, she never intended for those payees to acquire any interest in those checks. Where, as here, the names of the drawer-drawee bank customers are used as payees in a fraudulent embezzlement scheme, no sound reason exists not to apply the faithless employee

and fictitious payee rules. Plaintiff's reliance on *Snug Harbor Realty Co. v. The First Nat'l Bank of Toms River*, 105 *N.J.Super.* 572, 253 *A.*2d 581 (App.Div.), *aff'd o.b.*, 54 *N.J.* 95, 253 *A.*2d 545 (1969) is misplaced.

There, the faithless employee supplied the name of the payee intending for the payee to have an interest in the check. *Id.* at 574, 253 *A.*2d 581. Thus, *Snug Harbor* involved a bona fide transaction. *Snug Harbor* holds that if the payee is supplied in a bona fide transaction, the fictitious payee rule, *N.J.S.A.* 12A:3–405(1)(c), does not apply. But where, as here, the transaction is fraudulent, the rule applies and the drawer-employer of the unfaithful employee is liable. *Brighton, supra,* 176 *N.J.Super.* at 112–13, 422 *A.*2d 433; *New Amsterdam Casualty Co. v. First Penn Banking & Trust Co.,* 451 *F.*2d 892, 897–98 (3d Cir.1971). Beyond that, Estela actually prepared the checks for proper signature which did not occur in *Snug Harbor* or *Amsterdam.* That fact adds another dimension for applying the faithless employee and fictitious payee rules to this case. We hold that the judge properly relied on *Brighton* in dismissing the negligence claim. Because of Estela's fraudulent conduct as an employee of the drawer-drawee bank, the forged endorsements were effective as far as defendant-collecting bank was concerned.

■ Plaintiff further contends that its warranty claims based on *N.J.S.A.* 12A:4–207(1)(c) should not have been dismissed. As noted above, this claim was based on visible alterations on the face of checks numbered 9905 and 9911.

*N.J.S.A.* 12A:4–207(1)(c) in pertinent part provides that a "collecting bank warrants to the payor bank ... who in good faith pays ... the item that ... (c) the item has not been materially altered, except that this warranty is not given by any ... collecting bank that is a holder in due course and acts in good faith (i) to the maker of a note; or (ii) to the drawer of a draft whether or not the drawer is also the drawee; ...."

The threshold question which plaintiff must answer before visiting warranty liability upon defendant-collecting bank, is whether plaintiff as drawee bank paid the checks in good faith as required by *N.J.S.A.* 12A:4–207(1). The loss did not occur until plaintiff, as drawee bank, paid the checks. Therefor, if the alterations on the face of the check were as obvious as plaintiff alleges, plaintiff should have detected the fraud. After all, the fraud was made possible by plaintiff's poor managerial policy which placed Estela in a position where she could secure proper issuance of the checks, as part of the fraudulent scheme, without imprinting the amounts on the checks and by further placing her in a position of making certain that plaintiff, as drawee, paid them. The conduct of plaintiff and its faithless employee was so egregious in the commercial sense as to enable us to conclude, as a matter of law, that plaintiff did not pay the checks in good faith. For that reason, plaintiff's cause of action sounding in warranty was properly dismissed.

Summary judgment in favor of defendant is affirmed substantially for the reasons expressed by Judge Dowden in his oral decision of July, 25, 1991.

Affirmed.

634 A.2d 152
ANGELA M. LANZA, PLAINTIFF, v.
ALFIO J. LANZA, DEFENDANT.

Superior Court of New Jersey
Chancery Division Family Part
Burlington County

Decided April 21, 1993.