**Jacob BARAK, Appellant,**

**v.**

**Mack OBIOHA; Hanes Morgan & Co.; Donaldson, Lufkin & Jenrette Securities Corporation, f/k/a Credit Suisse First Boston Hudson Properties, Inc.; Integrity Life Insurance Company; Hudson Properties, Inc.**

No. 02–3555.

United States Court of Appeals, Third Circuit.

Argued July 28, 2003.

Decided Aug. 13, 2003.

Thomas B. Fiddler [Argued], Cozen & O'Connor, Philadelphia, PA, for Appellant.

Stephen L. Ratner [Argued], Proskauer Rose, New York, NY, and David A. Picon, Proskauer Rose, Newark, NJ, for Appellee, Donaldson, Lufkin & Jenrette Securities Corporation, f/k/a Credit Suisse First Boston Hudson Properties, Inc.

Before: SCIRICA, Chief Judge, RENDELL, and AMBRO, Circuit Judges.

OPINION OF THE COURT

RENDELL, Circuit Judge.

Jacob Barak appeals the District Court's grant of Donaldson, Lufkin and Jenrette ("DLJ")'s motion to dismiss. We will affirm the dismissal of Barak's claims of violations of the Uniform Commercial Code ("UCC") and breach of fiduciary duty, but will reverse and remand on his claims of negligence and breach of contract.[1]

As we write solely for the parties, to whom the facts are well known, our recitation of the facts will be brief. In his complaint, Barak asserted causes of action for breach of fiduciary duty, breach of contract, negligence, and UCC violations, all of which arose out of a banking relationship in which a partnership, of which Barak was one of the partners, opened an account, and Barak was one of two required signatories. Funds deposited in the account by Barak were later withdrawn without Barak's signature.

The District Court granted a motion to dismiss filed by DLJ, and in so doing considered certain documents while excluding others, namely Exhibits 3–10. The District Court based its decision not to consider these exhibits on *Eli Lilly & Co. v. Roussel Corp.*, 23 F.Supp.2d 460, 475 n. 21 (D.N.J.1998), in which it was noted that "unless a Court converts a Rule 12(b)(6) motion into a motion for summary judgment pursuant to Fed.R.Civ.P. 56, the court cannot consider material outside the pleadings (i.e. facts presented in briefs, affidavits or exhibits)." Despite concluding that it would not consider certain materials, the District Court nonetheless did take note of Exhibit 10, a declaration in which Barak stated that in a phone conversation, Marie Wayland, a DLJ representative, had "represented" to him that two signatures would be required to withdraw

funds from the partnership account. The court concluded that a "single telephone call does not establish" a relationship giving rise to tort liability.

Under Federal Rule of Civil Procedure 12(b)(6), a complaint will be dismissed on the pleadings if it appears beyond a doubt that the plaintiff will be unable to prove any set of facts consistent with the allegations of a claim that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 48, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc.*, 171 F.3d 912, 919 (3d Cir.1999). In deciding a motion to dismiss for failure to state a claim, all allegations contained in the complaint must be accepted as true, and the plaintiff must be given the benefit of every favorable inference that can be drawn from the allegations contained therein. *Id.* Our review of the District Court's decision to grant a motion to dismiss is *de novo*. Fed.R.Civ.P. 12(b)(6); *Emerson v. Thiel College*, 296 F.3d 184, 188 (3d Cir.2002). Subject matter jurisdiction over this case is premised on diversity, 28 U.S.C. § 1332(a)(1), and the applicable state law is New Jersey's. Therefore, the District Court was required to predict what the New Jersey Supreme Court would do under the same circumstances. *Hakimoglu v. Trump Taj Mahal Associates*, 70 F.3d 291, 292–293 (3d Cir. 1995).

We will first address Barak's claims of negligence and breach of contract, neither of which is specifically premised on Barak's being a "customer" of DLJ as that term is defined under the UCC. The New Jersey Supreme Court has recently spoken to the issue of when a financial institution may be liable in negligence to a non-customer. *See City Check Cashing Inc., v. Mfr.'s Hanover Trust Co.*, 166 N.J. 49, 764 A.2d 411 (N.J.2001). *City Check Cashing* teaches that the specific facts surrounding

---

1. Our jurisdiction over the District Court's    final order is based on 28 U.S.C. § 1291.

the relationship between a plaintiff and a bank must be carefully examined, because they could give rise to a special relationship, which may, in turn, give rise to a duty. *Id.* at 417. In that case, a check-cashing service brought a negligence action against a bank to recover for the untimely dishonor of a purportedly certified check. *Id.* at 411. The check-cashing service's employee had spoken by telephone to a bank's employee to inquire if the check was authentic, and later faxed the check to the bank requesting further information. *Id.* at 413. After not hearing from the bank, the check-cashing service cashed the check, which was later returned unpaid. *Id.* The court held that, based on these facts, the bank did not owe a duty to the check-cashing service. *Id.* at 419. However, in so holding, the court noted that "the question of whether a duty exists is a matter of law to be decided by the courts," and is "an inquiry that ultimately involves a weighing of the relationship of the parties, the nature of the risk, and the public interest" involved. *Id.* at 416. The court also acknowledged that in the banking context a special relationship may be created by facts that could establish any "agreement, undertaking or contact,"[2] between the bank and the plaintiff. *Id.* at 418.

Similarly, the question of whether a contract exists between two parties is fact-specific. Under New Jersey law, an enforceable contract is created when two parties "agree on essential terms and manifest an intention to be bound by those terms." *Weichert Co. Realtors v. Ryan,* 128 N.J. 427, 608 A.2d 280, 284 (N.J.2002). Such agreement may be evidenced by an express written document or implied from the parties' conduct and the surrounding circumstances. *Id.; see also Troy v. Rutgers,* 168 N.J. 354, 774 A.2d 476, 482 (N.J. 2001) ("The modern view is that, '[j]ust as assent may be manifested by words or other conduct, ... so intention to make a promise may be manifested in language or by implication from other circumstances.'") (quoting Restatement (Second) of Contracts § 4 cmt. a (1981)). In addition, the acceptance of mutual obligations must be accompanied by consideration, which need be nothing more than a "very slight advantage to one party, or a trifling inconvenience to the other." *Martindale v. Sandvik, Inc.,* 173 N.J. 76, 800 A.2d 872, 879 (N.J.2002).

█ Given the fact pattern before us, we conclude that it was premature to dismiss Barak's complaint for negligence and breach of contract on DLJ's motion. The District Court should have permitted the parties to engage in discovery to develop more fully the facts surrounding the relationship between Barak and DLJ. It is possible that further evidence of what transpired between Barak and DLJ might evince some relationship that gives rise to a duty or reveal the parties' intent to form a contract regarding the necessity of joint signatures. It cannot be said that Barak could prove no facts that would entitle him to relief on those claims.

█ We will, however, affirm the dismissal of Barak's UCC and breach of fiduciary duty claims because there is no sufficient documentary or evidentiary basis to establish that Barak was a "customer" as envisioned under the UCC, *see* N.J. Stat. Ann. § 12A:4–104, or that Barak's interaction with DLJ could give rise to the kind

---

**2.** The court defined these as follows: "An agreement is essentially a meeting of the minds between two or more parties on a given proposition. [citation omitted]. An undertaking is the willing assumption of an obligation by one party with respect to another or a pledge to take or to refrain from taking particular action. [citation omitted]. A contact is the loosest of the three terms, defined as the "establishment of communication with someone." [citation omitted]." *City Check Cashing,* 764 A.2d at 418.

of unique, special relationship that is fiduciary in nature. *See United Jersey Bank v. Kensey,* 306 N.J.Super. 540, 704 A.2d 38, 44 (N.J.Super.Ct.App.Div.1997) ("[T]here is no presumed fiduciary relationship between a bank and its customer."). *American Insurance Co. v. Fidelity Bank & Trust Co. of New Jersey,* 244 N.J.Super. 600, 583 A.2d 361 (N.J.Super.Ct.App.Div.1990), in which the New Jersey Superior Court held that a bank was potentially liable to a surety company for allowing funds to be withdrawn without its authorized signature, is not to the contrary, as in that case there was an express "joint control agreement" between the surety company, the account holder, and the bank, which is not present here.

Accordingly we will reverse the District Court's dismissal of Barak's negligence and breach of contract claims, but will affirm the dismissal of his UCC and breach of fiduciary duty claims, and remand for further findings consistent with this opinion.