The TRAVELERS INDEMNITY COMPANY, Plaintiff,

v.

Nancy STEDMAN, et al., Defendants.

Civ. A. No. 93–3684.

United States District Court, E.D. Pennsylvania.

Aug. 17, 1995.

Elizabeth K. Ainslie, Philadelphia, PA, for plaintiff.

William A. DeStefano, Gerald E. Burns, III, Philadelphia, PA, for defendants.

### MEMORANDUM

LOWELL A. REED, Jr., District Judge.

Currently pending before this Court is the motion by defendant Main Line Federal Savings Bank ("Main Line") for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c) or for partial summary judgment pursuant to Fed.R.Civ.P. 56(b) on the crossclaim filed by codefendant Merrill Lynch, Pierce, Fenner & Smith ("Merrill Lynch"). In dispute is the ultimate liability for pecuniary losses incurred by plaintiff The Travelers Indemnity Company ("Travelers") when defendants

Main Line, as depositary and collecting bank, and Merrill Lynch, as drawee bank, honored seventeen checks unlawfully drawn on the account of the American Lung Association by codefendant Nancy Stedman. In their answers to Travelers' complaint, both Merrill Lynch and Main Line asserted crossclaims for contribution and/or indemnity against each other. In addition, Merrill Lynch advanced a claim for breach of presentment warranties against Main Line pursuant to 13 Pa.Cons.Stat.Ann. § 3417. The instant motion by Main Line seeks judgment in its favor with regard to twelve of the seventeen checks. Merrill Lynch concedes that Main Line is entitled to judgment on the pleadings with regard to the six checks that were neither deposited nor cashed at Main Line, but Merrill Lynch argues that Main Line is not entitled to judgment on the pleadings with regard to the other six checks at issue.

This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 as the parties are of diverse citizenship and the amount in controversy exceeds $50,000, exclusive of interest and costs. For the reasons set forth below, the motion of Main Line for judgment on the pleadings will be granted in part, and denied in part.

### I.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In November 1988, plaintiff Travelers issued a comprehensive crime insurance policy to the American Lung Association (the "ALA"), thereby insuring the ALA against financial losses due to employee fraud or dishonesty. Shortly thereafter, in October of 1989, the ALA hired defendant Nancy Stedman as the Director of Bureau Affairs. In her capacity as Director of Bureau Affairs, Stedman possessed the authority to draw checks on a Working Capital Management Account (the "WCMA"), an account established by the ALA with defendant Merrill Lynch for the sole purpose of paying the ALA's operating expenses. The parties dispute whether the ALA's contract of deposit with Merrill Lynch required that each check drawn on the WCMA have two authorized signatures, but this factual issue is not relevant to the instant motion.

From approximately August 12, 1990 to March 13, 1992, Stedman embarked on a scheme of defalcation, misappropriating $129,624.23 of ALA funds from the WCMA. The ALA finally discovered the scheme in late April, 1992, and subsequently received compensation for its losses under the terms of its insurance policy with Travelers. Asserting its rights as the subrogee of the ALA, Travelers filed this civil action on July 9, 1993 against defendants Nancy Stedman, Merrill Lynch, and Main Line.

Merrill Lynch and Main Line agree that the seventeen checks misappropriated by Stedman can be divided into three groups based on the combination of forged or unauthorized maker and payee signatures. Group One is comprised of six checks totalling $5,343.00, each bearing a forged co-signatory's signature, or co-maker's signature, and forged indorsements. Main Line and Merrill Lynch agree that the Group One checks were neither deposited at nor cashed by defendant Main Line. *See* Main Line's memorandum in support of judgment on the pleadings at 2 ("Support memorandum"); Merrill Lynch's memorandum in opposition to judgment on the pleadings at 1–2 ("Opposition memorandum"). Group Two is comprised of six checks totalling $85,241.01, each payable to either "American Lung Association" or "American Lung Association/Stedman." Each Group Two check bore two forged maker's signatures and at least one forged indorsement. All Group Two checks were accepted for deposit into the personal checking account of Stedman by Main Line, and subsequently presented to and honored by Merrill Lynch. Finally, Group Three is comprised of five checks totalling $39,030.22, each payable to "American Lung Association" and bearing only a forged indorsement.

On October 13, 1994, Travelers filed an amended complaint to which defendant Main Line responded with a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). By an Order of this Court dated December 7, 1994, this motion was granted, and Main Line remained in this action only by virtue of the crossclaim for contribution and/or indemnity and breach of presentment warranties asserted by Merrill Lynch. Main Line has now filed the instant motion seeking either judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c), or partial summary judgment pursuant to Fed.R.Civ.P. 56(b) against Merrill Lynch on the latter's crossclaim in relation to the Group One and Group Two checks. Merrill Lynch concedes that Main Line is entitled to judgment on the pleadings with regard to the Group One checks because it is undisputed that Main Line neither cashed these checks nor accepted them for deposit. Opposition memorandum at 2. Merrill Lynch contends, however, that genuine issues of fact remain concerning the Group Two checks. *Id.* The Group Three checks are not the subject of the instant motion.

## II. DISCUSSION

### A. *Standard For Judgment On The Pleadings*

Main Line has filed the instant motion for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c) or for partial summary judgment pursuant to Fed.R.Civ.P. 56(b). Rule 12(c) provides that "after the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Fed.R.Civ.P. 12(c). Rule 12(c) provides further that "[i]f ... matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." *Id.* The only matters outside the pleadings introduced by either party is the admission by Merrill Lynch that the Group One checks were neither cashed nor deposited at Main Line. As Merrill Lynch concedes that Main Line is entitled to judgment on the pleadings with regard to the Group One checks, it is unnecessary for the Court to consider this admission. Therefore, this Court will treat the instant motion solely as one for judgment on the pleadings pursuant to Rule 12(c).

In deciding a Rule 12(c) motion, a district court must view the facts and inferences to be drawn from the pleadings in the light most favorable to the non-moving party. *Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.*, 11 F.3d 399, 406 (3d Cir.1993). Judgment pursuant to Rule 12(c) will only be

granted if it is clearly established that no material issue of fact remains to be resolved and that the movant is entitled to judgment as a matter of law. *Jablonski v. Pan American World Airways*, 863 F.2d 289, 290 (3d Cir.1988). In essence, this Court may not grant Main Line's motion for judgment on the pleadings unless it appears beyond doubt that Merrill Lynch can prove no set of facts in support of its crossclaim which would entitle it to the relief demanded. *See Rivera–Gomez v. Castro*, 843 F.2d 631, 635 (1st Cir.1988).

## B. *Loss Allocation Under the Uniform Commercial Code* [1]

■■■ Liability, or loss allocation, under the Uniform Commercial Code ("UCC") for honoring negotiable instruments containing forged or unauthorized signatures [2] is governed by whether the forgery at issue is that of a maker's signature [3] or of the indorsement of a payee or holder. [4] *Perini Corp. v. First Nat'l Bank*, 553 F.2d 398, 403 (5th Cir.1977); *see also McAdam v. Dean Witter Reynolds, Inc.*, 896 F.2d 750, 759 (3d Cir. 1990). Generally, a drawee [5] bank is strictly liable to its customer, the drawer, for payment over either a forged maker's signature or a forged indorsement. *Perini*, 553 F.2d at 403; *accord National Credit Union Admin. v. Michigan Nat'l Bank*, 771 F.2d 154, 156–157 (6th Cir.1985). Under the UCC, a forged maker's signature is wholly inoperative as the professed drawer's signature. *Perini*, 553 F.2d at 403; 13 Pa.Cons.Stat. Ann. § 3404(a). Accordingly, an instrument bearing a forged maker's signature is not properly payable, [6] and any payment on such an instrument is not to the professed drawer's order and violates the drawee bank's strict duty to charge the account of its customer only for properly payable items, *Perini*, 553 F.2d at 404; *see also* 13 Pa.Cons.Stat. Ann. § 4401(a). Moreover, when a drawee bank honors an instrument bearing a forged maker's signature, that payment is final in favor of a holder in due course or one who has in good faith changed his position in reliance on the payment. *Perini*, 553 F.2d at 404; 13 Pa.Cons.Stat.Ann. § 3418. As a result, where the only forgery is of the signature of the maker and not of the indorsement, the negligence of a holder in taking the forged instrument will not allow a drawee bank to shift liability to a prior collecting or depository bank, unless such negligence amounts to a lack of good faith, [7] or unless the payee bank returns the instrument or sends notice of dishonor within the limited time provided by § 4301 of the Pennsylvania adoption of the UCC. *Perini*, 553 F.2d at 404, 407; 13 Pa.Cons.Stat.Ann. § 3418 cmts. 4–5. But where the only forged signature is an indorsement, the drawee normally may pass liability back through the collection chain to the depositary or collecting bank, or to the forger herself if she is available, by a

---

1. Pennsylvania's adoption of the Uniform Commercial Code ("UCC") is found at 13 Pa.Cons. Stat.Ann. §§ 1101–9507. The portions of the UCC relevant to the instant case were adopted verbatim and in their entirety by Pennsylvania, including all official comments, and all the cases cited in this memorandum interpreting the relevant UCC provisions also involved verbatim state adoptions of the UCC. In addition, it is uncontested that as the events giving rise to this crossclaim occurred between approximately August 12, 1990 and March 13, 1992 the UCC revisions effective July 9, 1993 do not apply in this action.

2. An "unauthorized signature or indorsement" is a "signature or indorsement made without actual, implied or apparent authority and includes a forgery." 13 Pa.Cons.Stat.Ann. § 1201. For the sake of clarity, the terms "forged signature" and "forgery" will be used throughout this memorandum for an unauthorized signature or indorsement.

3. "Maker" is defined as "[a] person who signs or is identified in a note as a person undertaking to pay." 13 Pa.Cons.Stat.Ann. § 3103(a).

4. A "payee" is "the person to whom or to whose order a ... check is made payable." *Black's Law Dictionary* p. 1129 (6th ed. 1990). A "holder" is "[a] person who is in possession of ... an instrument ... issued or indorsed to him or to his order or to bearer or in blank." 13 Pa.Cons. Stat.Ann. § 1201.

5. A "drawee" is defined as "[a] person ordered in a draft to make payment." 13 Pa.Cons.Stat. Ann. § 3103(a).

6. *See* 13 Pa.Cons.Stat.Ann. § 4104(a).

7. "Good faith" is defined as "[h]onesty in fact in the conduct or transaction concerned." 13 Pa. Cons.Stat.Ann. § 1201.

claim for breach of presentment warranties. *See, e.g., McAdam,* 896 F.2d at 759.[8]

■ Regrettably, the drafters of the UCC failed to address the allocation of liability for honoring instruments containing *both* a forged maker's signature and a forged indorsement, so called "double forgeries." *See National Credit,* 771 F.2d at 157; *Perini,* 553 F.2d at 405–08. Nor have the state courts of Pennsylvania addressed this issue. Based on a thorough examination of the rationales behind the allocation of liability in "single forgery" cases, however, the Court of Appeals for the Fifth Circuit concluded that double forgeries should be treated as though only containing forged maker's signatures.[9] *Perini,* 553 F.2d at 405–08. Finding the Fifth Circuit's reasoning compelling, the Court of Appeals for the Sixth Circuit also held that double forgeries are to be considered, for loss allocation purposes, as bearing only forged maker's signatures. *National Credit,* 771 F.2d at 157–58. Additionally, although no other Circuit of the United States Court of Appeals has addressed this infrequently encountered region of the UCC,

numerous other federal and state courts have embraced the *Perini* holding. *See, e.g., Cumis Ins. Soc'y v. Girard Bank,* 522 F.Supp. 414 (E.D.Pa.1981); *Payroll Check Cashing v. New Palestine Bank,* 401 N.E.2d 752 (Ind. Ct.App.1980); *New Jersey Steel Corp. v. Warburton,* 139 N.J. 536, 655 A.2d 1382 (1995) (reaffirming rule of *Perini*); *Brighton, Inc. v. Colonial First Nat'l Bank,* 176 N.J.Super. 101, 422 A.2d 433 (1980), *aff'd,* 86 N.J. 259, 430 A.2d 902 (1981); *Winkie, Inc. v. Heritage Bank,* 99 Wis.2d 616, 299 N.W.2d 829 (1981). This Court finds the reasoning of these courts persuasive, and concludes that if the Supreme Court of Pennsylvania faced this issue it would also adopt the *Perini* holding. Therefore, this Court concludes that under Pennsylvania's adoption of the UCC, checks containing both a forged maker's signature and a forged indorsement should be treated, for loss allocation purposes, as though bearing only a forged maker's signature. As a result, the negligence of a holder in taking a double forgery will not allow a drawee bank, such as Merrill Lynch, to shift liability to a prior collecting or depos-

8. In *McAdam,* the Third Circuit elaborated on the loss allocation scheme under the UCC regarding forged indorsements on negotiable instruments. 896 F.2d at 759. "[T]he UCC allocates losses caused by forged endorsements on negotiable instruments based on the relative responsibilities of the parties to a transaction. Generally, a drawee bank is not entitled to debit the drawer's account when the bank pays over a forged endorsement ... because an unauthorized signature is wholly inoperative as that of the person whose name is signed. However, a drawee which has paid over a forged endorsement can shift the loss 'upstream' to previous endorsers, e.g., collecting banks, by way of an action for breach of warranty of good title. Ultimately, the loss falls on the party who took the check from the forger, or on the forger himself. Thus, the drawer of the check can usually avoid liability on a check with a forged endorsement simply by showing the unauthorized endorsement and the depositary or initial collecting bank will likely suffer the loss." *Id.* (citations omitted).

9. The traditional rationale for placing the loss on the drawee when a check bears a forged maker's signature is that the drawee should be familiar with the maker's signature, and therefore, is in the best position to uncover the fraud. *Perini,* 553 F.2d at 405. A less fictional rationalization for the rule of drawee liability, however, is that the drafters of the UCC found it highly desirable to end the transaction on an instrument when it is paid, rather than reopen and upset a series of

commercial transactions at a later date when the forgery is discovered. *Id.* (quoting UCC § 3–418, cmt. 1); *see also* 13 Pa.Cons.Stat.Ann. § 3418 cmt. 1. In comparison, the UCC loss allocation scheme for a check bearing a forged indorsement relies on the traditional rationale that depositary or collecting banks should bear the loss because they are in the best position to verify the credentials of the person depositing or cashing the check. *Perini,* 553 F.2d at 406. However, when a double forgery is involved, the heightened ability of a depositary or collecting bank to detect a fraud by verifying the credentials of the imposter is minimal at best; a party forging the maker's signature most likely will draw the check to a payee whose identity he or she can readily assume. *Id.* Moreover, the separate but related rationale, termed the "loss-causation principle," also justifies the rule of drawee liability when faced with double forgeries. *National Credit,* 771 F.2d at 157–58; *Perini,* 553 F.2d at 414–15. In a double forgery situation a check was never validly drawn to a payee entitled to payment, and hence, no true payee can appear with a claim against the drawer or drawee. Neither the drawer or drawee, therefore, can be said to have suffered a loss attributable to the forged indorsement, but rather the loss results from the drawee having paid the check over the forged drawer's signature where no payment was ever intended. *Perini,* 553 F.2d at 414–15.

itary bank, such as Main Line, unless such negligence amounts to a lack of good faith, or unless the drawee bank returns the instrument or sends notice of dishonor within the limited time provided by § 4301 of the Pennsylvania adoption of the UCC. *Perini,* 553 F.2d at 404, 407; 13 Pa.Cons.Stat.Ann. § 3418 cmts. 4–5.

### C. *The Crossclaim of Merrill Lynch*

Main Line has moved this Court to grant judgment on the pleadings on the crossclaim of Merrill Lynch as it relates to the Group One and Group Two checks. Because the parties agree that Main Line is entitled to judgment against Merrill Lynch on the Group One checks, however, this Court will apply the above legal analysis only to the crossclaim of contribution and/or indemnity and breach of presentment warranties as it relates to the Group Two checks.

#### 1. *Contribution*

In Pennsylvania, the right of contribution arises only between joint tortfeasors. *Pennine Resources v. Dorwart Andrew & Co.,* 639 F.Supp. 1071, 1074 (citing *Lasprogata v. Qualls,* 263 Pa.Super. 174, 397 A.2d 803, 805 n. 2 (1979)). Joint tortfeasors, as defined by the Pennsylvania Uniform Contribution Among Tortfeasors Act, are "two or more persons jointly or severally liable in tort for the same injury to persons or property, whether or not judgment has been recovered against all or some of them." 42 Pa.Cons.Stat. § 8322. Elaborating on the foregoing definition, Pennsylvania courts have reasoned that "the parties must either act together in committing the wrong, or their acts, if independent of each other, must unite in causing a single injury." *Pennine Resources,* 639 F.Supp. at 1074 (quoting *Lasprogata,* 397 A.2d at 805 n. 4) (internal quotations and brackets omitted). Where two or more persons owe to another the same duty, and by their common neglect such other is injured, a joint tort has occurred. *Id.*

It is uncontested that Main Line accepted from Nancy Stedman the Group Two checks for deposit, and subsequently presented these checks to Merrill Lynch for payment. It is also uncontested that Merrill Lynch honored the Group Two checks when presented, and charged the WCMA of the ALA for instruments that in fact bore dual forgeries. However, the independent actions of Main Line and Merrill Lynch did not, as a matter of law, unite in causing the losses suffered by Travelers. Because the Group Two checks bore no true maker's signatures, no true payee ever existed in relation to the Group Two checks. It cannot be said, therefore, that the losses suffered by Travelers resulted from the combined conduct of Main Line and Merrill Lynch. Rather, the losses suffered by Travelers resulted from Merrill Lynch having paid over the forged maker's signatures contained in the Group Two checks, instruments not properly payable under the terms of the Pennsylvania's adoption of the UCC. *See, e.g., National Credit,* 771 F.2d at 157–58 (discussing loss causation in "double forgery" situations). Therefore, no joint tort occurred, and no right to contribution exists between Merrill Lynch and Main Line.

Furthermore, as discussed above, the UCC has codified the grounds for assessing liability in the transfer of negotiable instruments. While principles of law and equity, such as contribution, continue to supplement the provisions of the UCC, these principles only apply where specific provisions of the UCC have not displaced them. *See* 13 Pa.Cons. Stat.Ann. § 1103. Under the terms of the UCC, as discussed above, Merrill Lynch is strictly liable to Travelers for payment over the forged maker's signatures contained in the Group Two checks, and Merrill Lynch cannot share that liability with Main Line. Therefore, the claim for contribution by Merrill Lynch necessarily fails as a matter of law not only because Merrill Lynch and Main Line committed no joint tort but also because the provisions of the UCC do not allow for the division of liability between Merrill Lynch and Main Line.

#### 2. *Indemnity*

The right of indemnity, unlike contribution, arises solely by explicit contractual agreement, or some other legal obligation between the parties which has been implicated because of a failure by the indem-

nitor to discover or correct a defect. *Klotz v. Superior Elec. Products Corp.*, 498 F.Supp. 1099, 1101 (E.D.Pa.1980). If however, the party seeking indemnification is actively negligent or is guilty of an independent act of negligence which also is a cause of the underlying injuries, indemnity is not available as a matter of law. *Consolidated Rail v. Youngstown Steel Door Co.*, 695 F.Supp. 1577, 1581 (E.D.Pa.1988). Nevertheless, if available, indemnity would shift the entire burden for the losses sustained by Travelers from Merrill Lynch to Main Line. *See Eagle–Picher Industries v. United States*, 846 F.2d 888, 892 n. 4 (3d Cir.1988).

■ Under the UCC, Main Line had a legal obligation to Merrill Lynch to act in good faith in its handling of the checks at issue here. *See Perini*, 553 F.2d at 404, 407; 13 Pa.Cons.Stat.Ann. § 3418 cmts. 4–5. Therefore, if Merrill Lynch can show that its crossclaim raises a factual issue as to whether Main Line acted in good faith with regard to the Group Two checks, then Merrill Lynch would have pleaded a viable claim for indemnification against Main Line such that Merrill Lynch's indemnity claim would survive the instant motion for judgment on the pleadings as to the Group Two checks. "Good faith" is defined as under the UCC as "[h]onesty in fact in the conduct or transaction concerned." 13 Pa.Cons.Stat.Ann. § 1201.

According to the amended complaint, all of the Group Two checks were made payable to the ALA or to the ALA and Stedman and bore forged endorsements; these checks, totalling $85,254.01, were then accepted for deposit by Main Line into Stedman's personal account. Amended complaint ¶ 15. In its crossclaim, Merrill Lynch alleges that it has a right to contribution and/or indemnity from Main Line "as a result of the negligence or intentional misconduct of [Main Line] which caused or contributed to plaintiff's losses," negligence or intentional misconduct apparently related to Main Line's acceptance of these checks for deposit. Amended crossclaims ¶ 4.

Taking all inferences in Merrill Lynch's favor, as is required when considering the instant motion by Main Line for judgment on the pleadings, the Court concludes that these factual allegations are sufficient to create a inference that Main Line did not act in good faith with regard to the Group Two checks. As Merrill Lynch points out, the allegation that Main Line accepted six checks for deposit into Stedman's personal account despite the fact that the checks were made out to the ALA alone or in combination with Stedman, and despite the fact that the checks totalled a sizable amount, $85,254.01, provides sufficient support for Merrill Lynch's allegation that Main Line's actions may have constituted intentional misconduct. And if Main Line's alleged actions did constitute intentional misconduct, they could not have been made in good faith. As a result, the pleadings, as interpreted in Merrill Lynch's favor, indicate that Main Line breached its legal obligation to act in good faith toward Merrill Lynch and so Merrill Lynch's crossclaim for indemnity against Main Line survives the instant motion.

### 3. Breach of Presentment Warranties

■ The final count of the crossclaim by Merrill Lynch is a claim for the an alleged breach of presentment warranties under to 13 Pa.Cons.Stat.Ann. § 3417. As the Court illustrated above, the loss allocation rules of the UCC permit a payee bank to shift liability to a depositary bank via a claim for breach of presentment warranties if, and only if, the checks at issue contain only forged indorsements. Should the checks in fact also bear forged maker's signatures, then a depositary or collecting bank is immunized from liability for having honored such checks unless the depositary or collecting bank failed to meet the requirements of the final payment rule codified in 13 Pa.Cons.Stat.Ann. § 3418. *See National Credit*, 771 F.2d at 157; *Perini*, 553 F.2d at 404. Moreover, checks bearing dual forgeries are treated as though containing only forged maker's signatures. Thus, because it is uncontested that all Group Two checks bear forged maker's signatures, liability for honoring these checks may only be assessed under the loss allocation rules relevant to checks bearing only forged maker's signatures. *See* discussion *supra* part II.B. In other words, Merrill Lynch is precluded

by the operation of law from asserting a claim for breach of presentment warranties under the loss allocation scheme of the UCC. As a matter of law, therefore, Merrill Lynch can prove no set of facts in support of this claim that would entitle it to the relief demanded, and this Court will accordingly also grant judgment on the pleadings to Main Line on the claim for breach of presentment warranties as it relates to the Group Two checks.

## III. CONCLUSION

For the reasons stated in the foregoing discussion, the motion by Main Line for judgment on the pleadings as it relates to the claims for contribution and breach of presentment warranties on the Group One and Two checks will be granted. The motion by Main Line for judgment on the pleadings as it relates to the claim for indemnity, however, will only be granted with regard to the Group One checks and will be denied with regard to the Group Two checks.

An appropriate Order follows.

### ORDER

**AND NOW,** this 16th day of August, 1995, upon consideration of the motion by defendant Main Line Federal Savings Bank ("Main Line") for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c) or for partial summary judgment pursuant to Fed.R.Civ.P. 56(b) (Document No. 24), and the response of codefendant Merrill Lynch, Pierce, Fenner & Smith ("Merrill Lynch") thereto, and for the reasons stated in the attached memorandum, it is hereby **ORDERED** that the motion for judgment on the pleadings is **GRANTED ON ALL COUNTS** of the crossclaim by defendant Merrill Lynch against defendant Main Line with respect to the **GROUP ONE CHECKS.**[1]

**IT IS FURTHER ORDERED** that the motion for judgment on the pleadings is **GRANTED** on the counts of the crossclaim for **CONTRIBUTION** and **BREACH OF PRESENTMENT WARRANTIES** with respect to the **GROUP TWO CHECKS.**

**IT IS FURTHER ORDERED** that the motion for judgment on the pleadings is **DENIED** on the count of the crossclaim for **INDEMNITY** with respect to the **GROUP TWO CHECKS.**

---

1. The Court accepts and adopts the characterization by defendants Merrill Lynch and Main Line of the checks at issue in this action. Group One consists of six (6) checks totalling $5,343.00, each bearing a forged co-signatory's signature, or co-maker's signature, and forged indorsements. Each of the Group One checks was neither deposited at nor cashed by defendant Main Line. Group Two consists of six (6) checks totalling $85,241.01, each payable to either "American Lung Association" or "American Lung Association/Stedman" and bearing two forged maker's signatures, as well as at least one forged indorsement. Group Three consists of five (5) checks totalling $39,030.22, each payable to "American Lung Association" and bearing only a forged indorsement. The Group Three checks, however, are not the subject of the instant motion for judgment on the pleadings.