Aladino RODRIGUEZ, et. al., Plaintiffs

v.

Cindy STEVENSON, et al., Defendants.

No. C.A. NO. 01–539–GMS.

United States District Court,
D. Delaware.

Dec. 27, 2002.

Neil F. Dignon, Georgetown, DE, for plaintiff.

M. Jane Brady, Atty. Gen., Marc Niedzielski, Deputy Atty., James J. Maxwell, General Deputy Atty., Dept. of Justice, Wilmington, DE, for defendants.

## MEMORANDUM AND ORDER

SLEET, District Judge.

## I. INTRODUCTION

Aladino Rodriguez ("Rodriguez"), Kandy Rodriguez, and Linsey Moore (collectively "the plaintiffs") filed the above-captioned suit against The Delaware Division of Family Services ("DFS"), Cindy Stevenson, Candice Charcow, Joelle Hitch, and Sheryl Nelson (collectively "the defendants") on August 13, 2001, alleging violations of certain constitutional rights. The plaintiffs seek compensatory and punitive damages and equitable relief pursuant to 42 U.S.C. § 1983. The plaintiffs filed an Amended Complaint on September 26, 2001, and, pursuant to a stipulation between the parties, the defendants answered on February 8, 2002. Presently before the court is the defendants' motion for judgment on the pleadings regarding all counts of the Amended Complaint. For the reasons indicated below, the court will grant the motion; all of the claims are hereby dismissed.

## II. BACKGROUND

Unfortunately, this case arises from an allegation of child abuse. Aladino Rodriguez was arrested and charged with child welfare endangering, third degree assault, and disorderly conduct[1] related to the alleged incident of child abuse occurring on June 27, 1999. Pursuant to Delaware law and the agency's regulations, the Delaware Division of Family Services initiated an administrative investigation to determine if Rodriguez had committed an act of child abuse. During the course of the administrative investigation, Stevenson, a DFS caseworker, asked Rodriguez if she could interview him. Rodriguez responded that he would be interviewed only in the presence of his attorney. Stevenson declined to interview Rodriguez with his attorney present. Because Rodriguez would not be interviewed without his attorney, Stevenson stated that she determined Rodriguez to be uncooperative. Stevenson consulted with her supervisor, Nelson, and the two decided, "after reviewing all the factors considered by Defendant Stevenson," Amended Complaint ¶ 41, that Rodriguez had abused his sons. The report of abuse was substantiated by a preponderance of the evidence standard. Stevenson's finding that Rodriguez was uncooperative contributed to this decision to found the allegation of abuse against him. As a result of the founding of the allegation of abuse, DFS placed Rodriguez's name on the Central Child Abuse Registry pursuant to title 16, section 902(2) and title 11, section 8563(b) of the Delaware Code. Rodriguez appealed DFS's determination that he had abused his minor son; these administrative appeals resulted in an affirmance of the finding of abuse.

The gravamen of the plaintiffs' grievance is that, during their investigation of the incident of abuse, the defendants violated Rodriguez's right to counsel. The subsequent founding of the allegation of abuse and the administrative appeals process, they allege, were tainted by this initial violation of Rodriguez's constitutional

---

**1.** The first and second charges were *nolle prossed;* Rodriguez entered a *nolo contendere* plea to the charge of disorderly conduct.

right to counsel. They contend that the alleged violation of Rodriguez's right to counsel and other unnamed "federal constitutional rights" gives rise to this § 1983 action. Accordingly, the plaintiffs have sued DFS, the investigating caseworker Stevenson, and her supervising agent, Nelson. In addition, the plaintiffs have sued Charcow, the administrative hearing officer who presided over the final administrative appeal, and Hitch, the then-Deputy Attorney General who served as legal counsel to the hearing officer. The plaintiffs have sued the defendants individually and in their respective official capacities.

## III. DISCUSSION

The defendants move for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). In deciding a motion for judgment on the pleadings, the court must view the facts and inferences to be drawn from the pleadings in the light most favorable to the non-moving party. *Bush v. City of Wilmington,* 1990 U.S. Dist. LEXIS 20195, at *2 (D.Del.1990). Judgment on the pleadings should be granted only if it is clearly established that no material issue of fact remains to be resolved and that the movant is entitled to judgment as a matter of law. *Travelers Indem. Co. v. Stedman,* 895 F.Supp. 742, 745–46 (E.D.Pa.1995). Here, the pleadings must show "beyond doubt" that there is no set of facts that would entitle the plaintiffs to the relief requested. *Id.*

The defendants move for judgment on the pleadings based on four grounds: 1) suit against the state or its agents acting in their official capacities is barred by the Eleventh Amendment of the United States Constitution; 2) the doctrines of absolute and/or qualified immunity preclude claims against the defendants; 3) the plaintiffs fail to state a claim upon which relief can be granted; and 4) the instant suit is barred by the relevant statute of limitations. The court will address each of these arguments in turn.

### A. Eleventh Amendment Immunity

The plaintiffs allege that the defendants, in both their individual and official capacities, "intentionally, knowingly, negligently violated Plaintiff Rodriguez's federal constitutional rights." Amended Complaint ¶ 46; *see also* Amended Complaint ¶¶ 54, 56 (alleging same). The plaintiffs seek, *inter alia,* compensatory and punitive damages. As stated earlier, the defendants are the Delaware Division of Family Services, employees of DFS, and the then-Deputy Attorney General.

 The defendants contend that the Eleventh Amendment deprives the court of jurisdiction to adjudicate the plaintiffs' civil rights claims against them in their official capacities for monetary damages pursuant to 42 U.S.C. § 1983. The Eleventh Amendment prevents federal courts from entertaining "any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state." U.S. CONST. amend. XI. In other words, private parties cannot sue states in federal court for monetary damages. *Board of Trustees of University of Alabama v. Garrett,* 531 U.S. 356, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001). For Eleventh Amendment purposes, certain state officials and agencies are treated as the state itself if "the state is the real, substantial party in interest." *Brathwaite v. Bunitsky,* 1998 WL 299357, *4 (D.Del. 1998) (quoting *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 99–100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984)). For example, sovereign immunity extends to state governmental bodies when "the department acts as an 'arm of the state.'" *Radeschi v. Pennsylvania,* 846 F.Supp. 416, 419 (W.D.Pa.1993) (quoting *Mt.*

*Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 280, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977)). A state is not entitled to immunity if it has waived its immunity or if Congress has abrogated the state's immunity through a valid exercise of its power. *Lavia v. Comm. of Pennsylvania,* 224 F.3d 190, 195 (3d Cir.2000).

▇ Although the defendants offer no evidence, caselaw, or analysis to support their contention that DFS is a state agency that should be treated as the state itself for immunity purposes, it is undoubtedly so. *See, e.g., Will v. Michigan Dep't of State Police,* 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) (explaining that neither a state nor a state agency is a "person" for purposes of 42 U.S.C. § 1983); *Doe v. Div. of Youth & Family Servs.,* 148 F.Supp.2d 462, 484 (D.N.J.2001) (holding that New Jersey Division of Youth and Family Services is a state agency for Eleventh Amendment purposes); *Evans v. Torres,* 1999 WL 1010983, at *3 (N.D.Ill. 1999) ("A state agency such as [the Illinois Department of Children and Family Services] is treated the same as a State for the purposes of the Eleventh Amendment."). The agency's immunity extends to its officials acting in their official capacities. *Vermeesch v. Hall,* 2000 WL 654953 (E.D.Mich.2000) (holding that suit for monetary damages against Michigan Family Independence Agency and its officials acting in their official capacities is barred by Eleventh Amendment). Thus, the DFS officials enjoy the immunity of the state.

▇ Likewise, the Deputy Attorney General clearly is a state agent who enjoys the Eleventh Amendment immunity of the state. *Brathwaite,* 1998 WL 299357, *4–5 (finding that the state is the real party in interest in suit against Deputy Attorney General, and therefore the suit against him in his official capacity is barred by Eleventh Amendment) (citing *Kentucky v. Graham,* 473 U.S. 159, 169–170, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) (holding that Eleventh Amendment immunity extends to suits for damages against state officials in their official capacity because a judgment against a state official in his official capacity imposes liability on the state entity he represents)). As such, any Eleventh Amendment immunity enjoyed by the state also extends to the Deputy Attorney General in her official capacity.

▇ Thus, the suit against the defendants in their official capacities may not proceed unless the state has waived its immunity or Congress has abrogated the state's immunity. Neither of these conditions is met in this case. First, the state has not waived its Eleventh Amendment immunity. A waiver will be found only where it has been stated "by the most express language or by such overwhelming implications from the text as will leave no room for any other reasonable construction." *Space Age Products, Inc. v. Gilliam,* 488 F.Supp. 775, 780 (D.Del.1980) (citing *Edelman v. Jordan,* 415 U.S. 651, 673, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974)). Such an express waiver may be made through clear constitutional or statutory language. *Lavia,* 224 F.3d at 195. Neither the constitution nor the code of Delaware expressly waives Delaware's Eleventh Amendment sovereign immunity. *Ospina v. Department of Corrections,* 749 F.Supp. 572, 579 (D.Del.1990). There is no other indication of waiver in this case. Second, Congress has not abrogated the states' immunity for claims under § 1983. *See Quern v. Jordan,* 440 U.S. 332, 345, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979). Because Delaware's immunity has not been waived or abrogated, the claims for monetary damages against the defendants in their official capacities must be dismissed for lack of jurisdiction.

## B. Absolute Immunity

### 1. Introduction

 The defendants contend they are absolutely immune from the instant § 1983 suit. Absolute immunity from monetary damages for actions taken in the performance of official functions is extended to certain state actors, like judges and prosecutors, to "protect[ ] the judicial process." *Briscoe v. LaHue,* 460 U.S. 325, 334, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983) (quoting *Imbler v. Pachtman,* 424 U.S. 409, 439, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976)). "In determining whether absolute immunity is available for particular actions, the courts engage in a 'functional analysis' of each alleged activity." *Donahue v. Gavin,* 280 F.3d 371, 377 (3d Cir.2002) (quoting *Kulwicki v. Dawson,* 969 F.2d 1454, 1463 (3d Cir.1992)). This analysis entails three considerations:

> 1) whether there is "a historical or common law basis for the immunity in question;" 2) whether performance of the function poses a risk of harassment or vexatious litigation against the official; and 3) whether there exist alternatives to damage suits against the official as means of redressing wrongful conduct.

*Kulwicki,* 969 F.2d at 1463 (citations omitted). The Third Circuit has emphasized that it is the nature of the function performed by a government official that drives the determination of whether that official enjoys immunity. *See, e.g., Ernst v. Child and Youth Servs. of Chester County,* 108 F.3d 486, 493–94 (3d Cir.1997), *cert. denied,* 522 U.S. 850, 118 S.Ct. 139, 139 L.Ed.2d 87 (1997) ("Running through our cases, with fair consistency, is a 'functional' approach to immunity questions") (quoting *Forrester v. White,* 484 U.S. 219, 224, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988)). Applying the functional analysis to the instant case, the court concludes that the defendants are entitled to absolute immunity for

their actions in prosecuting and presiding over the administrative hearings which affirmed DFS's finding of abuse, but are not entitled to absolute immunity for their investigative or administrative actions prior to or otherwise outside the context of the administrative hearings.

### 2. Defendants Charcow and Hitch

 In the instant case, the defendants are accused of violating Rodriguez's constitutional rights by their conduct in the following contexts: 1) the administrative investigation of the allegation of child abuse; 2) the decision to found the allegation of abuse; and 3) the administrative hearings which affirmed the finding of abuse. *See* Amended Complaint ¶¶ 32–46, 48–54. The defendant Charcow is an Administrator and Supervising Agent, and presided over the Level III administrative appeal hearing. Amended Complaint ¶¶ 12, 49. The defendant Hitch is an employee of the Delaware Department of Justice who was assigned to serve as counsel to DFS. Amended Complaint ¶ 10.

The Third Circuit recently has held that child welfare workers "are entitled to absolute immunity for their actions on behalf of the state in preparing for, initiating, and prosecuting dependency proceedings." *Ernst,* 108 F.3d at 495. This holding was the result of a functional analysis which revealed the analogous roles performed by family services workers and prosecutors in criminal proceedings, as well as considerations of public policy and the constitutional safeguards present in child welfare proceedings. The court finds that the defendants' functions in the DFS administrative appeal process are analogous to the functions of judges and prosecutors in criminal proceedings and certainly analogous to the functions of child welfare workers in "preparing for, initiating, and prosecuting" custody

and dependency proceedings.[2] *See, e.g., Vermeesch,* 2000 WL 654953, at *13–14 (holding that state employees have absolute immunity in prosecuting child neglect and delinquency petitions, and in filing abuse and custody petitions) (citing cases). Therefore, the defendants Charcow and Hitch are absolutely immune for their actions on behalf of the state.

### 3. Defendants Stevenson and Nelson

 Stevenson is the DFS caseworker who investigated the allegation of abuse. Amended Complaint ¶ 33. Nelson is an Administrator and Supervising Agent of Stevenson. Amended Complaint ¶¶ 14, 41. After Stevenson's administrative investigations, she and Nelson consulted and determined the allegation of abuse to be substantiated. Amended Complaint ¶ 41. The Third Circuit has held that it "would be unwilling to accord absolute immunity to 'investigative or administrative' actions taken outside the context of a judicial proceeding." *Ernst,* 108 F.3d at 497, n. 7. It also distinguished acts of "opening and investigating child abuse case and placing parent's name on central registry of abusers"—the exact actions at issue regarding the defendants Stevenson and Nelson—as conduct "entitled only to qualified immunity." *Id.* (citing *Achterhof v. Selvaggio,* 886 F.2d 826 (6th Cir.1989)); *see also Snell v. Tunnell,* 920 F.2d 673 (10th Cir.1990) (holding that pre-adjudicatory investigative conduct by child welfare workers gives rise to qualified immunity only); *Austin v. Borel,* 830 F.2d 1356 (5th Cir.1987) (holding actions involved with filing complaint rendering custody of child to family services agency as entitled to qualified immunity). Accordingly, Stevenson and Nelson do not enjoy absolute immunity for their administrative and investigative actions, but may be entitled to qualified immunity. The application of qualified immunity to these defendants is discussed below.

### C. Qualified Immunity

 "Governmental officials exercising discretionary functions have qualified immunity from suits seeking damages under § 1983 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Donahue v. Gavin,* 280 F.3d 371, 377 (3d Cir.2002) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). This analysis involves two steps. First, the court must determine whether the facts alleged, viewed in the light most favorable to the plaintiff, are sufficient to show that the defendant violated a constitutional right. *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). If the first prong is met, the court then must consider whether the right was clearly established at the time of the alleged constitutional violation. *Id.* This right must have been established in a "particularized" manner, such that "a reasonable official would understand that what he is doing violates that right." *Id.* at 202, 121 S.Ct. 2151 (quoting *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). If the law did not put the official on notice that his conduct was unlawful, summary judgment based on qualified immunity is appropriate. *Id.*

In the instant case, the plaintiffs appear to allege violations of the right to counsel pursuant to the Fifth and Sixth Amendments. In their briefing, they also address the Fifth Amendment right against

---

**2.** The court relies upon the in-depth discussion in *Ernst* of the analogous roles of child welfare workers and criminal prosecutors, and therefore discusses these analogous functions, as well as relevant policy considerations, to a lesser extent here.

self-incrimination. The court will address each of these claims in turn.

### 1. Sixth Amendment Right to Counsel

 The Sixth Amendment provides that "in all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." U.S. CONST. amend. VI. This right "is indispensable to the fair administration of our adversary system of criminal justice." *Brewer v. Williams,* 430 U.S. 387, 398, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977). Its essential import is that every person is entitled to the aid of a lawyer once adversary judicial criminal proceedings have been initiated against him or her. *Id.; see also McNeil v. Wisconsin,* 501 U.S. 171, 175, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991). The right is offense-specific, in that "it cannot be invoked once for all future prosecutions." *McNeil,* 501 U.S. at 175, 111 S.Ct. 2204.

 The plaintiffs argue that Rodriguez's Sixth Amendment right to counsel was violated because, as there were criminal charges pending against him when Stevenson asked to interview him, he had the right to have his counsel present during any such interview. The plaintiffs complain in their briefs that Rodriguez was then sanctioned for his attempt to exercise his right to counsel, in that his refusal to be interviewed without counsel present contributed to a finding of non-cooperation, which in turn contributed to a founding of the allegation of abuse. Properly construed, then, the wrong they allege is

not a violation of the right to counsel,[3] because Rodriguez *exercised* his right to counsel (to the extent it existed in the context described) by refusing to speak with DFS representatives without his attorney. By contrast, the Sixth Amendment is violated when, for example, the police interrogate a defendant about a crime for which he has been charged, without the presence of his attorney, despite the defendant's assertion of his right to have counsel present. *See, e.g., McNeil,* 501 U.S. at 175–76, 111 S.Ct. 2204; *Spano v. New York,* 360 U.S. 315, 79 S.Ct. 1202, 3 L.Ed.2d 1265 (1959) (holding that the Sixth Amendment was violated when defendant was interrogated by police, post-indictment, despite repeated requests to see his lawyer); *Massiah v. United States,* 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964) (finding a violation of the Sixth Amendment when incriminating statements deliberately elicited from defendant after indictment and without his counsel present were used against him at his trial). Such is certainly not the case here. Rodriguez asserted his wish to have counsel present during any interview by DFS personnel, and, consequently, no such interviewing occurred. The plaintiffs have not established a violation of the Sixth Amendment right to counsel.

### 2. Fifth Amendment Right to Counsel

 The Amended Complaint also alleges that the defendants violated Rodriguez's "Fifth Amendment" right to counsel.[4] Amended Complaint ¶ 43. The so-

---

**3.** To the extent these assertions allege a violation of due process rights, the court addresses the argument at *infra* Part III.C.3.

**4.** Although the defendants assert that the complaint is "utterly devoid" of any Fifth Amendment claim, Reply Brief at 8, the Amended Complaint reads: "The United

States Constitution guarantees the accused in a criminal case the right to counsel if he so requests. U.S. Const. Amend. V, VI." Amended Complaint ¶ 43. This citation to the Fifth Amendment in the context of the right to counsel is sufficient to "give the defendant fair notice of what the plaintiff's

called Fifth Amendment right to counsel actually springs from notions of due process as well as *Miranda* and subsequent jurisprudence which sought to promote the Fifth Amendment right against self-incrimination. *See Miranda v. Arizona*, 384 U.S. 436, 439, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) (citing as the holding's impetus "the necessity for procedures which assure that the individual is accorded his privilege under the Fifth Amendment to the Constitution not to be compelled to incriminate himself"); *McNeil*, 501 U.S. at 175–77, 111 S.Ct. 2204 (comparing and contrasting Fifth and Sixth Amendment rights to counsel); *Dickerson v. United States*, 530 U.S. 428, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000) (reviewing evolution of jurisprudence governing admissibility of incriminating statements). This right to counsel attaches during any in-custody interrogation by the government, and is not offense-specific. *Miranda*, 384 U.S. at 468–69, 86 S.Ct. 1602 ("if a person in custody is to be subjected to interrogation, he must first be informed in clear and unequivocal terms" of his right to remain silent and to have counsel present); *McNeil*, 501 U.S. at 177, 111 S.Ct. 2204 ("Once a suspect invokes the *Miranda* right to counsel for interrogation regarding one offense, he may not be reapproached regarding *any* offense unless counsel is present.") (emphasis in original).

Just as his Sixth Amendment right to counsel was not violated, neither was Rodriguez's right to counsel per the Fifth Amendment. Disregarding problematic issues of custody and interrogation,[5] the plaintiffs' claim fails. The state did not interview or otherwise elicit information from Rodriguez in the absence of his attorney; indeed, despite their request, DFS officials did not interview Rodriguez *at all.* The allegation that his right to counsel was violated in the absence of any interview whatsoever is misstated at best.

### 3. Fifth Amendment Right against Self–Incrimination and Due Process

In addition to the right to counsel, the Amended Complaint alleges violations of "rights" and "constitutional rights" generally. Amended Complaint ¶¶ 46, 53, 54, 56, 66. Despite arguments in the plaintiffs' Answering Brief regarding violations of the Fifth Amendment privilege against self-incrimination and Fifth and/or Fourteenth Amendment due process rights, the Amended Complaint does not raise any such claim. In its sixty-eight paragraphs, the complaint does not mention the Fifth Amendment, except once in the context of the right to counsel;[6] the Fourteenth Amendment or due process is never mentioned. Even in light of the liberal pleading policy of the Federal Rules, the court doubts that the complaint is sufficient to give the defendants fair notice as to any claims ostensibly based on the Fifth Amendment right against self-incrimination, or due process rights arising from the Fifth or Fourteenth Amendments. The fact that the plaintiffs argued such violations in their Answering Brief does not aid their cause; indeed, it only convinces the court further that the plaintiffs, being aware of such legal arguments, could have

---

claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

5. *See, e.g., Miranda*, 384 U.S. at 467, 444, 86 S.Ct. 1602 (designing safeguards to counteract "inherently compelling pressures" of "in-custody interrogation," custodial interroga-

tion constituting "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way").

6. *See supra* note 4.

and should have alleged them in the complaint instead of as an afterthought in their briefing. It is the complaint, and not any subsequent briefing, that serves as notice to the defendants of the wrongs they are accused of committing and the legal grounds upon which the plaintiffs' allegations are based.

 Nevertheless, the court notes that certain language of the Amended Complaint may imply a violation of Rodriguez's due process rights. For example, paragraph 46 states: "By using the fact that Plaintiff Rodriguez exercised his Constitutional right to have counsel present during an interview with an agent of the state as a factor contributing to founding an allegation of abuse against him Defendant's [sic] Stevenson and Nelson ... violated Plaintiff Rodriguez's federal constitutional rights." The Amended Complaint does not state which "federal constitutional rights" were violated as a result of the defendants' consideration of Rodriguez's refusal to be interviewed by DFS personnel. Although the court is unpersuaded that this language is sufficient to raise a due process claim, the court will address such a claim for the sake of clarity and comprehensiveness.

In their briefing, the plaintiffs rely upon only two cases for their implied assertion that the defendants violated Rodriguez's due process rights: *Massiah v. United States*, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964), and *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). *See* Answering Brief at 12. Both of these cases are quite distinguishable from the instant case. In *Massiah*, incriminating statements were deliberately elicited by federal agents from the petitioner, a post-indictment criminal defendant who had retained a lawyer, in the absence of the petitioner's attorney. *Massiah*, 377 U.S. at 201, 84 S.Ct. 1199. These

incriminating statements were then used against Messiah at his criminal trial, which resulted in a conviction. *Id.* The Supreme Court held that the statements were obtained in violation of the petitioner's Sixth Amendment right to counsel and therefore could not be used against him in his trial. *Id.* at 206–7, 84 S.Ct. 1199.

In *Doyle*, the Court found a violation of Fourteenth Amendment due process where evidence of criminal defendants' silence was introduced at their trial for impeachment of their subsequently offered exculpatory statements. *Doyle*, 96 S.Ct. at 2241. The Court held that the *Miranda* warnings which were read to the criminal defendants at the time of their arrest contained the implicit assurance that exercising their *Miranda* right to remain silent would carry no penalty. *Id.* at 2245. This holding was consistent with the Court's previous ruling in *Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965), that it is violative of the Fifth Amendment to instruct a jury in a criminal case that it may draw an inference of guilt from a defendant's failure to testify.

 *Massiah* and *Doyle* are distinguishable from the instant case in important ways. First, it is true that Rodriguez's criminal charges were pending against him at the time of DFS's investigation into the allegation of abuse. His rights to remain silent and to have counsel present as a medium between himself and the police certainly had attached as to his criminal proceedings. However, unlike Messiah, Rodriguez made no incriminating statements, and, accordingly, no incriminating statements were introduced against Rodriguez in the DFS proceedings. Further, to the extent that Rodriguez's silence was used against him in the DFS investigation and hearings, inviting a comparison to *Doyle*, the instant case is again distinguishable. Although it is constitutionally

impermissible to draw an inference of guilt from a criminal defendant's failure to testify at his trial, "the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them." *Baxter v. Palmigiano*, 425 U.S. 308, 318, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976) (declining to extend *Griffin* to disciplinary proceedings in state prisons). Indeed, in certain contexts, it is permissible to draw an adverse inference from a criminal defendant's silence. *Id.* at 319 (citing cases). In any case, DFS investigations and hearings are not criminal proceedings, and involve "important state interests other than conviction for crime." *Id.; see also* DEL.CODE ANN. tit. 29, § 9006 (2002) (defining the statutory purpose for the creation of DFS as "the provision of child protective, placement, treatment, prevention, adoption and related services").

In sum, the plaintiffs urge that, in the context of a child abuse investigation by a family services agency such as DFS, the refusal of the person against whom the allegation of child abuse has been made to be interviewed by the agency's personnel may not give rise to an adverse inference against that person, or, more specifically, to a finding that the person is "uncooperative." The plaintiffs have presented no caselaw to support this contention, and the court has found none. Indeed, the cases point to the opposite conclusion. Even if the plaintiffs have sufficiently alleged a violation of the privilege against self-incrimination or constitutional due process, no such claim can be sustained by the facts presented in the Amended Complaint.

The plaintiffs have not shown that the defendants violated the constitutional right to counsel arising from the Fifth or Sixth Amendments. Nor have the plaintiffs shown that the defendants violated the plaintiffs' due process rights or any other constitutional or statutory right of which a reasonable person would have known. As such, the remaining defendants are entitled to qualified immunity as to monetary claims against them in their individual capacities.

### D. Failure to State a Claim [7]

■ The defendants also argue that they are entitled to judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(b)(6). Dismissal is appropriate pursuant to this Rule if the complaint fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). Again, in this inquiry, the court must accept as true and view in the light most favorable to the non-movant the well-pleaded allegations of the complaint. *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 183–84 (3d Cir.2000). The court "need not accept as true 'unsupported conclusions and unwarranted inferences.'" *Id.* (quoting *City of Pittsburgh v. West Penn Power Co.*, 147 F.3d 256, 263 n. 13 (3d Cir.1998)) (quoting *Schuylkill Energy Res., Inc. v. Pennsylvania Power & Light Co.*, 113 F.3d 405, 417 (3d Cir.1997)). However, it is the duty of the court "to view the complaint as a whole and to base rulings not upon the presence of mere words but, rather, upon the presence of a factual situation which is or is not justiciable." *Id.* at 184 (quoting *City of Pittsburgh*, 147 F.3d at 263).

As discussed above, the plaintiffs have not shown that Rodriguez's right to counsel, privilege against self-incrimination, or due process rights have been violated. The Amended Complaint alleges no other

---

7. Because all of the claims for monetary damages have been dismissed, the court addresses this argument as to the claim for injunctive relief only.

legal basis for the relief requested. *See Alsaifullah v. Travis*, 160 F.Supp.2d 417, 420 (E.D.N.Y.2001) ("allegations must also be premised on the proper theory of liability"); *Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173 (3rd Cir.1988) (noting that claimant's rights "rise no higher than the facts alleged" and defendants "cannot be said to have violated the [law] in ways that have not been alleged"). The court can imagine no other theory of liability which could conceivably support a § 1983 claim under the alleged facts; in any case, the court is not required "to stretch [its] imagination to manufacture allegations to supplement the complaint." *Hamilton v. Jamieson*, 355 F.Supp. 290, 298 (E.D.Pa.1973). Further, the complaint's broad allegations of violations of other "constitutional rights" are not sufficient to state a claim under 42 U.S.C. § 1983. *Alsaifullah*, 160 F.Supp.2d at 420; *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 186 (holding that "conclusory legal dressing" is insufficient to support a claim). Even viewed in the most charitable light, then, the plaintiffs have failed to state a claim upon which relief can be granted. Accordingly, all of the claims, including the remaining claim for injunctive relief, must be dismissed.

### E. Statute of Limitations

Because all of the claims have been dismissed, the court need not address the defendants' assertion that the complaint is barred by the statute of limitations.

## IV. CONCLUSION

All of the defendants enjoy the sovereign immunity of the state regarding the claims against them in their official capacities. The defendants Joelle Hitch and Candice Charcow are absolutely immune from suits for monetary damages for the actions at issue, which were made in the performance of their official functions. The defendants Cindy Stevenson and Sheryl Nelson enjoy qualified immunity from the present suit because the plaintiffs have not shown a violation of a constitutional or statutory right. Finally, the complaint fails to state a claim for which relief can be granted. For these reasons,

IT IS HEREBY ORDERED that:

1. The defendants' motion for judgment on the pleadings (D.I.15) is GRANTED.

2. The complaint is DISMISSED WITH PREJUDICE.